No. 62,246

MICHAEL ALLEN HEINSON, *Plaintiff-Appellee*, v. PATTI PORTER, *Defendant*, and METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY, *Garnishee-Appellant*.
Consolidated with:
METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY, *Plaintiff*, v. PATTI PORTER, *Defendant*.

(772 P.2d 778)

Opinion filed April 14, 1989.

*Donald T. McMillan*, of Rivkin, Radler, Dunne & Bayh, of Uniondale, New York, argued the cause, and *David R. Schlee* and *Michele Anderson Bonhag*, of Smith, Gill, Fisher & Butts, of Kansas City, Missouri, and *Jerome V. Bales*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, were with him on the briefs for garnishee-appellant.

*Donald W. Vasos*, of Vasos, Kugler & Dickerson, of Kansas City, argued the cause, and *Stephen G. Dickerson*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by the garnishee, Metropolitan Property and Liability Insurance Company (Metropolitan), from a summary judgment entered in favor of plaintiff-garnishor Michael Allen Heinson in the amount of $500,000. Liability arises from a $100,000 homeowner's policy issued by Metropolitan to defendant Patti Porter.

The facts underlying this litigation are presented as a confusing maze of narrow passages, twisting streets, and cul-de-sacs. However, once a thoroughfare has been established, resolution of the issues presents no great difficulty. Although numerous issues are designated by Metropolitan, they may be categorized as challenges to the propriety of the trial court's award to the plaintiff-garnishor of: (1) the $100,000 limits of the homeowner's policy; (2) the $400,000 difference between the policy limits and the $500,000 judgment the plaintiff-garnishor obtained against defendant-insured Porter; and (3) "pre-garnishment" interest.

### THE $100,000 POLICY LIMITS

The trial court based its award of the policy limits on: (1) construing the policy in favor of the insured where provisions thereof are capable of more than one construction; and (2) estoppel by Metropolitan to deny coverage as a result of its conduct toward its insured.

The pertinent policy provisions are as follows:

**"COVERAGE F—PERSONAL LIABILITY**

"Metropolitan will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **bodily injury** sustained by other persons or **property damage**, to which this insurance applies, caused by an **occurrence**. Metropolitan shall have the right and duty, at its own expense, to defend with attorneys selected by and compensated by Metropolitan, any suit against the **Insured** seeking damages on account of such **bodily injury** or **property damage** even if any of the allegations of the suit are groundless, false or fraudulent. Metropolitan may make such investigation and settlement of any claim or suit as it deems expedient. METROPOLITAN SHALL NOT BE OBLIGATED TO PAY ANY CLAIM OR JUDGMENT OR TO DEFEND ANY SUIT AFTER THE APPLICABLE LIMIT OF METROPOLITAN'S LIABILITY HAS BEEN EXHAUSTED BY PAYMENT OF JUDGMENTS OR SETTLEMENTS.

. . . .

"EXCLUSIONS APPLICABLE TO SECTION II

"METROPOLITAN DOES NOT INSURE:

1. UNDER COVERAGE F—PERSONAL LIABILITY AND COVERAGE G— MEDICAL PAYMENTS TO OTHERS:

. . . .

d. BODILY INJURY OR PROPERTY DAMAGE ARISING OUT OF BUSINESS PURSUITS OF ANY INSURED EXCEPT ACTIVITIES THEREIN WHICH ARE ORDINARILY INCIDENT TO NON-BUSINESS PURSUITS . . . ."

There was evidence before the court that defendant Mrs. Porter advised the Metropolitan agent at the time she was seeking to purchase the homeowner's policy that she was operating a children's day care business in her home and wanted to know if

she needed to purchase additional insurance to cover this activity. The agent advised her she would have such coverage in the homeowner's policy. Enough information was contained in the application relative to the day care business that one of Metropolitan's regional representatives telephoned Mrs. Porter prior to issuance of the policy to learn the full particulars of the business. Mrs. Porter answered all questions truthfully and, despite some doubts about issuing the policy, Metropolitan did issue the policy.

On October 8, 1979, plaintiff, who was age 10 months and one of Mrs. Porter's day care charges, fell from a highchair during his regular stay in her home and received serious head injuries. As a result thereof, plaintiff suffered permanent impairment of his gross and fine motor and cognitive skills, which requires ongoing occupational, physical, and speech therapy.

Mrs. Porter reported the incident to Metropolitan. On June 29, 1982, thirty-two months later, plaintiff brought suit against Mrs. Porter, alleging her negligence had caused plaintiff's injuries. Mrs. Porter notified Metropolitan of the lawsuit on August 13, 1982. Metropolitan then commenced a line of action involving many changes of position. This may be summarized as follows:

August 17, 1982—Reservations of rights letter denying coverage based upon: (1) late notice; (2) business pursuits exclusion; and (3) liability assumed by contract.

Early September 1982—Coverage reviewed and determination made loss was covered. This determination was made based upon inaccurate information in Metropolitan's computer as to coverage purchased. Reservation of rights letter was withdrawn. Independent counsel hired for Mrs. Porter.

September 16, 1982—File again reviewed and determination made withdrawal of reservation of rights letter was too broad. New reservation of rights letter was sent based on late notice only—mailgram to same effect also sent.

September 24, 1982—Internal memo written expressing concern over why policy was issued when company knew risks of day care operation were involved.

September 28, 1982—File reviewed and computer error noticed. Much internal conferring proceeded as to the situation.

September 29, 1982—Telephoned Mrs. Porter and explained a new reservation of rights letter would be sent. Internally,

company expressed concern about estoppel to deny coverage. November 4, 1982—New reservation of rights letter sent raising all three original grounds.

Internal memoranda reflect that Metropolitan continued to be concerned that events had proceeded too far and that it would be estopped to deny coverage. Nevertheless, on April 6, 1983, Metropolitan brought a declaratory judgment action against Mrs. Porter to determine whether or not there was coverage. *Plaintiff Heinson was not a party thereto and had no knowledge of same during its pendency.* This case was settled on the basis that Metropolitan would pay Mrs. Porter $500, which would cover Mrs. Porter's attorney fees for defending the declaratory judgment action and taking her through bankruptcy proceedings.

In the Release and Agreement signed June 6, 1983, in the declaratory judgment action, Mrs. Porter specifically agreed to:

"FOREVER RELEASE AND DISCHARGE Metropolitan, its agents and servants and all other persons, agents, firms, entities and corporations of and from any and all liability, actions, claims, demands, right or interest which the undersigned now has or may hereafter have in connection with the aforesaid policy of insurance in regard to the claims asserted by Heinson as above recited, it being expressly understood and stated by the undersigned that she has no coverage in regard to the Heinson allegations nor has she a right of defense under the aforesaid policy of insurance by virtue of the foregoing and that the consideration hereby paid is paid solely by Metropolitan Insurance Company to avoid expense and delay in connection with the aforesaid matters and to obtain final judicial resolution hereof."

The journal entry in the declaratory judgment action was filed June 2, 1983. Judgment was entered in favor of Metropolitan against Mrs. Porter and decreed that: (1) Metropolitan was not obligated to defend Mrs. Porter in the Heinson suit; (2) Mrs. Porter had no coverage under her insurance policy with Metropolitan; and (3) the policy excluded any coverage for Mrs. Porter for the Heinson lawsuit.

On August 19, 1983, Metropolitan withdrew its defense of Mrs. Porter in the Heinson action. On August 22, 1983, Mrs. Porter filed proceedings in bankruptcy. On January 19, 1984, Mrs. Porter was discharged in bankruptcy. The Heinson claim continued only to the extent of any insurance coverage. On September 24, 1984, plaintiff Heinson and Mrs. Porter settled their action. The district court approving the settlement had no knowledge of the declaratory judgment action and the Porter-Metropolitan settlement. The judgment in the settlement was for

$500,000. One of the terms of the settlement was that plaintiff would look only to Metropolitan for payment and would never seek collection of the judgment from Mrs. Porter. This aspect of the facts will be discussed in more depth in the next issue.

The trial court held that the determination of no coverage in the declaratory judgment action was not binding upon the plaintiff. Metropolitan challenges this determination.

Plaintiff argues that he should have been named in the declaratory judgment action as an injured claimant in a personal injury action as a jurisdictionally necessary party in any declaratory judgment proceeding brought by the insurer seeking a declaration of noncoverage.

Declaratory judgments are governed by K.S.A. 60-1701, which authorizes courts of record to make binding adjudications of rights in cases of actual controversy. While K.S.A. 60-219 is silent on the parties necessary to such adjudications of rights, the statute provides that a "contingently necessary" person, if subject to service of process, "shall be joined in the action." Under K.S.A. 60-219 a person is contingently necessary if:

"(1) complete relief cannot be accorded in his absence among those already parties, or (2) he claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action in his absence may (i) as a practical matter substantially impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

In 20 Appleman, Insurance Law and Practice § 11371 (1980), it is said:

"All persons interested in a [declaratory judgment] controversy should ordinarily be brought into court, although this does not require persons to be brought in with whom the plaintiff has no controversy. Where all interested parties have not been brought before the tribunal, the court ordinarily will dismiss the action without prejudice.

"The indispensability of parties is determined on practical considerations. . . . Persons who have been injured in an automobile accident are certainly proper parties to a suit by the liability insurer to determine the coverage of its policy, and the better rule would seem to be that they are both proper and necessary parties to the maintenance of the suit. Hence, it would be error to dismiss such persons from the declaratory judgment suit. In fact, one case was reversed upon appeal where it refused the right to interested parties to attack a default judgment. However, if the court does not or cannot secure jurisdiction over them, their rights cannot be destroyed by their nonappearance; nor can such rights be determined where they are not made parties to the suit.

"It is clear in such cases that both the insured and such injured persons should be made parties defendant to the action."

In *Franklin Life Ins. Co. v. Johnson,* 157 F.2d 653, 658 (10th Cir. 1946), it was held:

"The purpose of the declaratory judgment action is to settle actual controversies before they have ripened into violations of law or legal duty or breach of contractual obligations. In declaratory actions brought to determine coverage under insurance policies issued to protect the insured against liability to third persons, third persons asserting such liability have been held to be proper parties to a declaratory judgment proceeding, although their claims against the insurer are contingent upon recovery of a judgment against the insured. [Citations omitted.]"

In the case before us the primary basis for Metropolitan's denial of coverage was the nature and circumstances of the alleged negligent act causing the injury. In such a situation it is even more appropriate to include the injured person in the declaratory judgment action than where the basis of denial of coverage is a matter essentially between the insured and insurer, such as cancellation for nonpayment of premium. Here, Metropolitan paid Mrs. Porter $500 to settle the declaratory judgment action. Both parties were aware Mrs. Porter would shortly be filing for bankruptcy. The risk of collusion to exclude coverage for the injured party's damages is great under such circumstances.

We conclude the district court did not err in holding the declaratory judgment action was not binding upon plaintiff-garnishor.

The district court further held that the language of the policy was capable of more than one construction and should, accordingly, be construed in favor of coverage. The rule of law applied is well established contract law. Ambiguous language in a contract is construed against the scrivener. See *Central Security Mut. Ins. Co. v. DePinto,* 235 Kan. 331, 333-34, 681 P.2d 15 (1984); *Foltz v. Begnoche,* 222 Kan. 383, Syl. ¶ 4, 565 P.2d 592 (1977); *Desbien v. Penokee Farmers Union Cooperative Association,* 220 Kan. 358, 363, 552 P.2d 917 (1976). However, the rule was misapplied in this case. The exclusion in the policy clearly excluded business activities and the day care operation was a business endeavor. The district court then proceeded upon a tortured path to hold that, while the day care operation was a business activity, the specific act of negligence claimed arose

from a nonbusiness pursuit (checking on her barking dog and leaving the child unattended while so checking). This reasoning is inappropriate. Presumably, if an automobile rolls off a hoist at a repair shop and injures someone while the serviceman is tying his shoelace, the accident occurred as a result of a nonbusiness pursuit. Mrs. Porter was being paid to care for the child—this was her business. It matters not for coverage purposes whether Mrs. Porter left the child unattended to check on her barking dog or to get a clean diaper for the child.

The district court further held Metropolitan unable, under the totality of the circumstances, to deny coverage. We find no error in this conclusion. There are really two areas for application of the doctrine of estoppel—Metropolitan's actions prior to issuance of the policy, and its actions after the child was injured. The district court concentrated on the former area, but the totality of the circumstances must be considered. Facts in favor of the application of estoppel may be summarized as follows. Metropolitan knew Mrs. Porter was operating a day care business in her home. Its agent told her the policy would cover the business. The application filed showed the business endeavor. Metropolitan was sufficiently concerned to telephone her for the full particulars of the business operation. With reluctance not expressed to Mrs. Porter, the policy was issued. No specific language was included expressly excluding the day care activity. After the loss, we have a long series of conflicting and confusing reservation of rights letters. Much of the time Metropolitan believed the loss was not excluded from the policy. Metropolitan had many internal concerns after the loss that it had gone too far to deny coverage. Under the totality of the extant circumstances, we believe there is ample evidence upon which the district court could conclude Metropolitan is estopped to deny coverage under the policy.

We, therefore, conclude that the district court did not err in holding Metropolitan had liability in the amount of its policy limits of $100,000.

THE $400,000 JUDGMENT IN EXCESS OF POLICY LIMITS

In his settlement with Mrs. Porter, plaintiff took an assignment of all of Mrs. Porter's claims against Metropolitan. The trial court based its judgment above the policy limits on bad faith and breach of fiduciary duty. These are tort claims. Kansas has long

followed the common-law rule that tort claims are not assignable, although there are no recent cases involving the question. In *Star Mfg. Co., Inc. v. Mancuso*, 680 F. Supp. 1496 (D. Kan. 1988), Judge Patrick F. Kelly summarized the existing Kansas law on the subject as follows:

"Kansas has traditionally adhered to the common law rule that a right of action for damages resulting from a tort is not assignable. *Alldritt v. Kansas Centennial Global Exposition*, 189 Kan. 649, 657, 371 P.2d 181 (1962); *Redmon v. Salisbury Co.*, 178 Kan. 639, 641, 290 P.2d 809 (1955); *Howe v. Mohl*, 168 Kan. 445, 448, 214 P.2d 298 (1950). In *City of New York Ins. Co. v. Tice*, 159 Kan. 176, 180, 152 P.2d 836 (1944), the Kansas Supreme Court stated that the basis for such a prohibition was an attempt to restrain 'the traffic of merchandising in quarrels, of huckstering in litigious discord.'

"Plaintiff argues the traditional prohibition against the assignment of tort actions is no longer valid, because the statute which prohibited such assignment was repealed in 1963.

"Until 1963, Kansas law provided:

"'Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section twenty-eight; but this section shall not be deemed to authorize the assignment of a thing in action, not arising out of contract.'

G.S. 1949, 60-401.

"In 1963, the legislature repealed the former code of civil procedure and the above-cited section was incorporated into what is now K.S.A. 1987 Supp. 60-217(a), which provides in relevant part:

"'Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, conservator, trustee of an express trust, receiver, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in the party's own name without joining the party for whose benefit the action is brought.'

Plaintiff contends that as a result of the repeal of G.S. 1949, 60-401, and the enactment of K.S.A. 60-217(a), tort claims are now assignable in Kansas. Plaintiff concedes that the Kansas Supreme Court has not specifically ruled on the issue of assignability of torts since 1963, but plaintiff contends that given the opportunity, the court would find that tort claims are now assignable.

"The court does not find plaintiff's argument persuasive for a number of reasons. First, a quick review of K.S.A. 1987 Supp. 60-217(a), does not reveal any language which specifically permits the assignability of a cause of action in tort. Second, the Kansas Supreme Court has never indicated that the rule prohibiting the assignment of tort actions has been repealed or overruled. In fact, in at least two cases, the court has indicated that the rule still prevails.

"In the recent case of *Newell v. Krause*, 239 Kan. 550, 722 P.2d 530 (1986), the court was faced with the same argument presented here—e.g., that the repeal of G.S. 1949, 60-401, marked the end of the prohibition against the assignment of tort actions. While the court in *Newell* declined to discuss the status of the law on assignability of torts because the case was 'an inappropriate vehicle' for such an in-depth discussion, the court did observe that '[t]he broad public policy con-

siderations inherent in this area of the law are wholly absent from the case before us.' 239 Kan. at 556, 722 P.2d 530. Thus, the court in *Newell* recognized the continued existence of the public policy considerations underlying the rule against assignment of tort actions.

"Moreover, in a case decided some 10 years after the repeal of G.S. 1949, 60-401, the Kansas Supreme Court cited and applied the doctrine prohibiting the assignment of a tort claim. *See Cullen v. Atchison, Topeka & Santa Fe Railway Co.*, 211 Kan. 368, 374, 507 P.2d 353 (1973).

"Plaintiff further alleges that even if tort claims are generally not assignable, an exception exists when the tortfeasor has benefited from his wrongdoing. This argument lacks merit. Each of the cases cited by plaintiff involves a situation in which the court implied or presumed a contract on the part of the wrongdoer to pay to the party injured the full value of the benefits resulting to such wrongdoer. *See, e.g., Hewey v. Fouts*, 91 Kan. 680; 683, 139 P. 407 (1914). Thus, the assignee was actually bringing the action on an implied contract, rather than tort theory. Such is not the case here.

"The court therefore finds that the assignment of a cause of action in tort is still prohibited in Kansas. Accordingly, the court must find that Star Manufacturing does not 'own' the cause of action in this case and is not the 'real party in interest' as required by Fed. R. Civ. P. 17(a)." 680 F. Supp. at 1498-99.

We agree that tort claims remain unassignable in Kansas. There are sound continuing policy reasons for this common-law rule. Tort claims are personal in nature and third parties should not be permitted to buy claims for personal injuries and losses.

Inasmuch as tort claims are not assignable, plaintiff acquired no rights thereto from the invalid assignment. Further, we do not recognize bad faith as an independent tort in Kansas. See *Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980).

The question remains whether the circumstances herein support liability to the insured Mrs. Porter of $400,000 above the policy limits. It is well established that actions of an insurer to its insured can result in liability of the insurer for amounts in excess of the policy limits. The common thread in such cases is that the wrongful conduct of the insurer has caused liability of the insured to a third party which he or she would not have had but for the wrongful conduct of the insurer. Typical of such cases is where the insurer unreasonably refuses to settle with the injured party within the policy limits, and the insured is ultimately faced with a judgment in excess of the policy limits. Illustrative thereof is *Farmers Ins. Exchange v. Schropp*, 222 Kan. 612, 567 P.2d 1359 (1977), wherein we held:

"A liability insurer, having assumed control of the right of settlement of claims

against the insured, may become liable in excess of its undertaking under the policy provisions if it fails to exercise diligence and good faith in considering offers to compromise the claim for an amount within the policy limits." Syl. ¶ 1.

Generally speaking, no matter how miserably an insurance company has treated its insured in handling a third party's claim against the insured, its liability is limited to the actual damage suffered by the insured as a result of the insurer's conduct. Therefore, if an insurance company wholly abandons its insured and through his or her own endeavors the insured receives a verdict in his favor, his or her claim against the insurance company would be limited to attorney fees and other costs the insured has incurred in defending the action. Under circumstances specified in particular statutes, an insured may recover attorney fees incurred by the insured in an action against its insurer. For example, see K.S.A. 40-256. Additionally, insurance companies which are found to make a "general business practice" of unfair claim settlements (K.S.A. 1988 Supp. 40-2404[9]) may be fined and subjected to other remedial penalties by the Kansas Department of Insurance pursuant to K.S.A. 40-2407.

In the action before us, no attorney fees or other litigation costs of Mrs. Porter are involved. Rather, the plaintiff-garnishor is seeking to collect the entire $500,000 judgment it negotiated with Mrs. Porter—but under plaintiff's agreement with insured Mrs. Porter, the insured can never have any liability for payment thereof. The trial court was impressed by the fact that plaintiff offered to settle for the $100,000 limits, which offer was rejected by Metropolitan. But this offer was made on July 25, 1985—during the pendency of the garnishment and almost a year after the Heinson-Porter settlement judgment was entered. So the refusal to settle was not a factor in the $500,000 judgment being entered. The refusal to settle then caused no damage to the insured, who has no liability to pay the excess.

It should be noted that the Heinson-Porter settlement states that it is patterned after the one approved in *Shelman v. Western Casualty & Surety Co.*, 1 Kan. App. 2d 44, 562 P.2d 453, *rev. denied* 225 Kan. 845 (1977). *Shelman* involved application of a Missouri statute which permits an abandoned insured to settle with an injured party on a no personal liability basis, and it permits the injured party to proceed against the insurer to collect the judgment. No amount in excess of the policy limits was

involved in *Shelman*. Plaintiff's reliance on *Shelman* is misplaced.

Under the circumstances, even assuming wrongful conduct by Metropolitan herein, Mrs. Porter had no liability to plaintiff for the $400,000 excess judgment and, hence, Metropolitan has no liability to Mrs. Porter to pay such excess to Heinson in this garnishment action. We conclude the district court erred in entering judgment for the $400,000 excess.

It is clear that the district court was irritated by what it viewed as Metropolitan's clandestine procurement of the declaratory judgment, but the remedy for that was to declare it a nullity as to Heinson (as the trial court did)—not to penalize Metropolitan further through the award of the excess judgment.

## THE AWARD OF INTEREST

By virtue of our decision on the preceding issue, this issue is limited to the trial court's award of interest on the $100,000 policy limits from the date of the Heinson-Porter judgment (September 24, 1984). The bulk of the argument presented relates to the award of interest on the $400,000 excess judgment.

Under the totality of the circumstances herein, we conclude the district court did not err or abuse its discretion in the award of interest on the $100,000 from September 24, 1984.

The judgment is affirmed in part and reversed in part.