(795 P.2d 71)

No. 63,027

CODY SUSNIK, A MINOR CHILD, BY & THROUGH HIS PARENTS, NATURAL GUARDIANS & NEXT FRIENDS CRAIG SUSNIK & DORIS SUSNIK, AND CRAIG SUSNIK & DORIS SUSNIK, AS INDIVIDUALS, *Appellants*, v. WESTERN INDEMNITY COMPANY, INC., ANTHONY J. DONNELLY & LORETTA A. DONNELLY, *Appellees*.

Opinion filed September 22, 1989.

*Pamela G. Phalen* and *Fred Spigarelli*, of Spigarelli, McLane & Short, of Pittsburg, for appellants.

*Leigh C. Hudson*, of Hudson, Mullies & Reynolds, of Fort Scott, for appellees.

Before GERNON, P.J., REES, J., and M. KAY ROYSE, District Judge, assigned.

ROYSE, J.: This is an action for a declaratory judgment. Plaintiffs sought a determination that a homeowners insurance policy issued

by defendant Western Indemnity Co., Inc., to defendants Anthony and Loretta Donnelly provided coverage for injuries sustained by Cody Susnik.

Loretta Donnelly began babysitting Craig and Doris Susnik's two children on a regular basis in September 1985. Loretta Donnelly cared for four or five other children at that time, for which she received payment. Some of the children were cared for on a part-time basis. Loretta Donnelly did not hold any type of license for babysitting or child care.

On November 26, 1985, Cody Susnik was seriously injured while in the care of Loretta Donnelly. Plaintiffs alleged that Loretta Donnelly left Cody Susnik and other children unsupervised and that Cody Susnik met with serious personal injuries at the hands of another unsupervised minor child. The precise manner in which Cody Susnik was injured remains in dispute: Plaintiffs claim that Loretta Donnelly's youngest son jumped on Cody, pulled Cody's arms behind him, and tried to ride Cody like a pony.

Defendant Western Indemnity filed a motion for summary judgment. The trial court sustained that motion, concluding that the homeowners policy did not provide coverage.

Plaintiffs' first argument on appeal is that the trial court erred in ruling that the "business pursuits" exclusion applied to babysitting. The policy provides:

"1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

. . .

b. arising out of business pursuits of any insured . . . .

This exclusion does not apply to:

(1) activities which are ordinarily incident to nonbusiness pursuits . . . ."

The policy further defines "business" to include "trade, profession or occupation."

The Kansas Court of Appeals considered the "business pursuit" exclusion in *Krings v. Safeco Ins. Co. of America,* 6 Kan. App. 2d 391, 628 P.2d 1071 (1981). The court held:

"A business pursuit is constituted of two elements: continuity and profit motive. As to the first, there must be a customary engagement or a stated occupation; as to the latter, there must be shown to be such activity as a

means of livelihood, gainful employment, procuring subsistence or profit, commercial transactions or engagements." 6 Kan. App. 2d 391, Syl. ¶ 5.

The record in this case demonstrates that Loretta Donnelly provided babysitting services for pay as far back as 1981. During 1984 and 1985 she provided care for four to five children for money. Loretta Donnelly charged between six and eight dollars per day per child. She received twelve dollars per day for caring for Cody Susnik and his brother, who was there part of the day. Her 1985 tax return listed her principal business as "child day care" and reflected gross receipts of $4,024.50 from babysitting. The Donnellys listed Loretta's babysitting as a source of household income.

The record provides a substantial basis for concluding that Loretta Donnelly's babysitting met the criteria of continuity and profit motive. Plaintiffs' arguments, focusing on the fact that babysitting may be conducted on an irregular or voluntary basis, have no application here. The trial court did not err in holding that the "business pursuits" exclusion applied.

The plaintiffs' second argument on appeal is that the trial court erred in holding the exception to the exclusion for nonbusiness activities did not apply. Plaintiffs contend that the exception applies because child care is ordinarily incident to nonbusiness pursuits; that if the policy language requires consideration of the specific activity causing the injury, then summary judgment is inappropriate when the specific cause of the injury has not been determined; or that the policy language is ambiguous and must be given the construction most favorable to the insured. Western Indemnity contends that supervision of children for compensation is ordinarily a business pursuit.

The Kansas Supreme Court recently discussed the "business pursuit" exclusion and the exception for activities "ordinarily incident to nonbusiness pursuits" in *Heinson v. Porter*, 244 Kan. 667, 772 P.2d 778 (1989). Rejecting the trial court's conclusion that the exclusion and exception are ambiguous, the court stated:

"The exclusion in the policy clearly excluded business activities and the day care operation was a business endeavor. The district court then proceeded upon a tortured path to hold that, while the day care operation was a business activity, the specific act of negligence claimed arose from a nonbusiness pursuit (checking on her barking dog and leaving the child unat-

tended while so checking). This reasoning is inappropriate. Presumably, if an automobile rolls off a hoist at a repair shop and injures someone while the serviceman is tying his shoelace, the accident occurred as a result of a nonbusiness pursuit. Mrs. Porter was being paid to care for the child — this was her business. It matters not for coverage purposes whether Mrs. Porter left the child unattended to check on her barking dog or to get a clean diaper for the child." 244 Kan. at 672-73.

A number of other jurisdictions have addressed the "business pursuits" exclusion with its exception for activities ordinarily incident to nonbusiness pursuits. See generally Annot., Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy, 48 A.L.R.3d 1096, 1107-09. One line of cases has focused on the particular activity of the babysitter at the time of the injury. These cases reflect a belief that the policy emphasizes the "activity," whether the activity was the legal cause or merely an indirect cause of injury. See, *e.g., George v. Breising*, 206 Kan. 221, 227, 477 P.2d 983 (1970). Thus, *Gulf Insurance Company v. Tilley*, 280 F. Supp. 60 (N.D. Ind. 1967), *aff'd* 393 F.2d 119 (7th Cir. 1968), held that brewing coffee was an activity within the exception, and coverage was afforded for liability to a child who sustained burns when the babysitter's coffeepot fell over; *Nationwide Mutual Fire v. Collins*, 136 Ga. App. 671, 222 S.E.2d 828 (1975), concluded that maintaining heat for the home was an activity ordinarily incident to nonbusiness pursuits and extended coverage when a babysitter placed a child on the floor to change its diaper and the child burned its hand on a floor furnace grill; and *State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App. 3d 250, 430 N.E.2d 641 (1981), applied the exception to preparation of lunch for the household, when a child pulled a pan of boiling water on himself in the babysitter's kitchen.

Other cases have examined the "activity" and concluded the policy did not afford coverage, taking the view that an activity may be incident to a business pursuit or incident to a nonbusiness pursuit, but not both. Courts adopting this "either/or" approach to the "activity," in other words, seem to read the policy to require that the activity be ordinarily incident to nonbusiness pursuits *and* that the activity not be incident to the insured's business pursuit, if the exception is to apply. Decisions which

have utilized this approach to the particular activity are *Economy Fire & Casualty Co. v. Bassett*, 170 Ill. App. 3d 765, 525 N.E.2d 539 (1988), refusing to extend coverage for a child struck by a car in the babysitter's driveway, as use of the driveway to pick up children is associated with a babysitter's business pursuit even though it may also be a nonbusiness activity; and *Aetna Life and Casualty v. Ashe*, 88 Or. App. 391, 745 P.2d 800 (1987), *rev. denied* 305 Or. 103 (1988), affirming a trial court judgment that vacuuming is incident to a babysitter's business pursuits (child suffered fatal electrical burns from vacuum cord).

A second line of cases takes a more general view of the "activity" of the insured. Those which view the relevant "activity" as "child care" or "supervision of children" or "maintenance of a safe environment for children" frequently conclude that the activity is ordinarily incident to a nonbusiness pursuit. *Crane v. State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 117, 95 Cal. Rptr. 513, 485 P.2d 1129 (1971) ("[I]t is difficult to conceive of an activity more ordinarily incident to a noncommercial pursuit than home care of children."); *Bankers Standard Ins. Co. v. Olwell*, 309 N.W.2d 799 (Minn. 1981); *Western Fire Ins. Co. v. Goodall*, 658 S.W.2d 32 (Mo. App. 1983); *Robinson v. Utica Mut. Ins. Co.*, 585 S.W.2d 593 (Tenn. 1979). See also 7A Appleman, Insurance Law and Practice § 4501.10, p. 280 (Berdal ed. 1979): ("There are few activities more 'incident to nonbusiness pursuits' than taking care of babies."). These cases reject the either/or approach to business and nonbusiness activities. They seem to operate from the premise that an activity may be associated with the insured's business pursuit and still be ordinarily incident to nonbusiness pursuits. See 7A Appleman, Insurance Law and Practice § 4501.10, p. 277; Frazier, *The "Business Pursuits" Exclusion in Personal Liability Insurance Polices: What the Courts have Done With It*, 1970 Ins. L.J. 519, 520.

Other courts adopting a general view of the insured's activity view the relevant "activity" as "supervising children on a regular basis for compensation" and, predictably, conclude that the exclusion applies. *Stanley v. American Fire & Cas. Co.*, 361 So. 2d 1030 (Ala. 1978); *Moncivais v. Farm Bureau Mut. Ins. Co.*, 430 N.W.2d 438 (Iowa 1988); *Haley v. Allstate Ins. Co.*, 129 N.H. 512, 529 A.2d 394 (1987). These decisions seem to recognize

no meaningful distinction between the terms "business pursuit" and "activity."

A number of cases which have addressed the exclusion and exception conclude the policy language is ambiguous and that the policy must therefore be construed to provide coverage. See *Gulf Insurance Company v. Tilley*, 280 F. Supp. 60; *State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App. 3d at 255-57; *Foster v. Allstate Ins. Co.*, 637 S.W.2d 655 (Ky. App. 1981); and *Robinson v. Utica Mut. Ins. Co.*, 585 S.W.2d 593.

The apparent purpose of the exception is to maintain coverage for ordinary "nonbusiness" activities which would generally be covered under the policy, even though those activities may be performed in the course of a business pursuit. See Frazier, *The Business Pursuits Exclusion Revisited*, 1977 Ins. L.J. 88. The cases from other jurisdictions demonstrate the difficulty of accomplishing that apparent purpose, while still giving effect to the language of the exclusion *and* the exception.

The divergent results from other courts interpreting the same policy language in the context of babysitting and, particularly, child supervision could be viewed as some justification for concluding that Western Indemnity's policy is ambiguous: the language of the exclusion and exception in this context "may be understood to reach two or more possible meanings." *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 334, 681 P.2d 15 (1984). In fact, the Supreme Court has acknowledged the possible relevance of divergent opinions from foreign jurisdictions:

"The mere fact that there is such a contrariety of judicial opinion over what constitutes 'piloting' or 'serving as a crew member' of an airplane demonstrates, we think, the inherent ambiguity of these phrases. The parties here and the parties in all those other lawsuits have each been able to make tenable arguments for construing the same language in different ways, and the courts have done the same. We certainly can't say that the language used by the insurer here 'clearly reveals its stated purpose.' " *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.*, 215 Kan. 937, 948, 529 P.2d 171 (1974).

The Kansas Supreme Court, however, has said that the policy language is not ambiguous. *Heinson v. Porter*, 244 Kan. at 672-73. Because *Heinson* concludes that the insurer is estopped to deny coverage, the discussion of policy language could be viewed

as dicta in the sense of a statement unnecessary to the decision. *Rodriguez v. Cascade Laundry Co.*, 185 Kan. 766, 770, 347 P.2d 455 (1959). Viewed another way, however, questions of policy language construction appear to have been raised by the facts of *Heinson.* See *Rodriguez*, 185 Kan. at 768-69. In addition to rejecting the ambiguity argument, *Heinson* refuses to apply the particular activity analysis of Indiana, Georgia, Illinois, and Oregon. In any event, the record in this case does not disclose the particular activity of Loretta Donnelly.

*Heinson* appears to adopt the general analysis reflected in *Stanley, Haley,* and *Moncivais,* although it does not mention any of those cases. To focus on the general activity as discussed in *Heinson,* Loretta Donnelly's day care operation was a business endeavor. She was being paid to care for Cody Susnik—this was her business.

Affirmed.