(781 P.2d 1107)
No. 63,230

EVERETT GLENN, *Plaintiff/Appellant,* v. DALE FLEMING, *Defendant,* and AETNA CASUALTY & SURETY COMPANY, *Garnishee/ Third-Party Plaintiff/Appellee,* v. RANDALL WELLER, *Third-Party Defendant.*

Opinion filed November 3, 1989.

*Jerry R. Palmer,* of Palmer, Marquardt & Snyder, of Topeka, for appellant.

*Donald A. McKinney* and *H. Lee Turner,* of Turner & Boisseau, Chartered, of Great Bend, for appellee.

Before GERNON, P.J., LEWIS, J., and DAVID F. BREWSTER, District Judge, assigned.

GERNON, J.: Everett Glenn won a judgment against Aetna's insured, Dale Fleming, in a personal injury action. Glenn filed a garnishment action against Aetna, alleging that Aetna had acted in bad faith during the settlement negotiations and seeking payment of the amount of the judgment in excess of the policy limits. The district court granted Aetna's motion for summary judgment. Glenn appeals this ruling, and also appeals the district court's earlier denial of his motion for summary judgment. Aetna cross-appeals from one of the findings made by the district court in its ruling denying summary judgment to Glenn.

Glenn was severely injured as a result of a propane gas fire that occurred as he finished fueling Fleming's vehicle. He sued five different defendants, and settled with four of the defendants prior to the pretrial conference. Fleming did not settle with Glenn, nor did he allege fault as to the other defendants. In his answer, he denied that any of the defendants were at fault.

At trial the jury found Glenn to be 30% at fault for the accident and Fleming to be 70% at fault. The total verdict was $1,500,000. The verdict reduced by 30% was $1,050,000. This case was appealed to the Kansas Supreme Court on the question of whether the fault of the defendants who had settled should have been compared. *Glenn v. Fleming*, 240 Kan. 724, 732 P.2d 750 (1987).

In May of 1986, Fleming signed a covenant not to execute agreement with Glenn. In this covenant, Fleming assigned all of his contractual rights with Aetna under the insurance policy to Glenn, and Glenn agreed not to execute upon or impose liens on any other property of Fleming, either real or personal, tangible or intangible, presently owned or after acquired.

In June of 1986, Glenn filed a praecipe for garnishment against Aetna. Aetna admitted to owing the $25,000 amount, its maximum coverage through its policy, but denied liability for any judgment in excess of that.

Glenn responded that Aetna was liable for the entire judgment because it had acted in bad faith in settlement negotiations. The dispute concerning the bad faith claim continued for some time with numerous motions and hearings. Voluminous pleadings were

filed, expert witnesses were consulted, and more discovery took place.

To complicate the record further, Aetna was given permission to file a third-party petition against its own attorney. This petition alleged that its attorney had handled the defense of Fleming negligently and that he was liable for any judgment rendered against Aetna in the bad faith action by Glenn. This legal malpractice case was later bifurcated from the garnishment action.

Glenn first moved for summary judgment against Aetna. Aetna responded to this motion, but the court denied Glenn's motion, finding that substantial triable issues of fact still existed. As part of its decision, the court ruled that Aetna's attorney was acting on behalf of Aetna and that Aetna had the right to control and direct the litigation.

Aetna filed a summary judgment motion and statement of uncontroverted facts in March of 1988. Glenn filed a general response to this, stating that the number of uncontroverted facts was too great to respond to individually and that analyzing the statements and presenting documentation to controvert them would not be helpful to the court.

Aetna then countered with a motion for partial summary judgment and a statement of uncontroverted facts. Glenn responded and addressed the uncontroverted facts paragraph by paragraph.

A hearing was held on Aetna's summary judgment motions and a motion of Aetna for clarification and reconsideration of the earlier decision denying Glenn's summary judgment motion. A pretrial conference was also held during this hearing. At this conference Glenn agreed to drop all claims against Aetna except the bad faith claim.

The court ruled by sending a letter to counsel stating that it had reviewed everything and was granting Aetna's first motion for summary judgment. The court adopted as its own all of the arguments and statements of uncontroverted facts put forth by Aetna pursuant to its motion. The attorney for Aetna was instructed to cause the matter to be journalized.

Glenn timely appealed the court's decisions denying his motion for summary judgment and sustaining Aetna's motion for summary judgment. Aetna filed a general cross-appeal.

The case was set for oral argument in August of 1989, but

shortly before oral argument Aetna filed a motion for summary disposition of the case on the basis of a recently reported Kansas Supreme Court case, *Heinson v. Porter*, 244 Kan. 667, 772 P.2d 778 (1989). This court denied the motion for summary disposition but granted leave that it be renewed at oral argument.

The issues we are called upon to resolve are (1) should the case be decided summarily, (2) did the district court err in denying Glenn's motion for summary judgment, (3) did the district court err in granting Aetna's motion for summary judgment, (4) if Glenn prevails, for what amount of interest should Aetna be liable, and (5) did the district court err in ruling that Aetna could be vicariously liable for any negligence of its attorney?

Our resolution of this appeal makes it unnecessary to address issues (3) and (5) identified above.

(1) SHOULD THE CASE BE DECIDED SUMMARILY?

Aetna argues that this case should be summarily affirmed because it is controlled by the recent Kansas Supreme Court case of *Heinson v. Porter*, 244 Kan. 667.

In *Heinson*, Metropolitan Property and Liability Insurance Company had issued a $100,000 homeowner's policy to Porter with the knowledge that she ran a children's day care business in her home. The Heinson's child was injured at the home and suit was filed against Porter. Metropolitan and Porter reached an agreement in a declaratory judgment action in which Porter stated that she had no coverage in regard to the Heinson allegations and no right of defense under the Metropolitan insurance policy. Heinson knew nothing about this settlement. Heinson and Porter settled the personal injury lawsuit for $500,000. One of the terms of the settlement was that Heinson would never seek collection of the judgment from Porter but would look to Metropolitan for payment. Heinson then filed a garnishment action against Metropolitan. The district court concluded that Metropolitan was liable for the $500,000, which generated an appeal to the Kansas Supreme Court. The Kansas Supreme Court first upheld the finding that the non-coverage agreement between Metropolitan and Porter was not binding upon Heinson because Heinson was a necessary party who should have been named in the declaratory judgment action.

The court also considered the $400,000 judgment, which was

in excess of the policy limits. The district court had awarded the excess judgment because it found that Metropolitan had acted in bad faith and had breached its fiduciary duty to its insured. The Kansas Supreme Court noted that bad faith is a tort claim, and that tort claims are *not* assignable in Kansas. The court then discussed whether Heinson was entitled to recover the policy excess amount of $400,000 through the garnishment action. The court stated that, no matter how miserably an insurance company had treated its insured in handling a third party's claim against the insured, the company's liability is limited to the actual damage suffered by the insured. In this case, the court found that Porter, the insured, could never have any liability for the payment of the judgment because of the agreement between the plaintiff Heinson and Porter. Because Porter had no liability to pay the judgment, she had no actual damages, and therefore Metropolitan was not liable to pay the excess to Heinson. The court further stated that, even if there had been wrongful conduct on the part of Metropolitan, it still would not be responsible for the payment of the excess. 244 Kan. at 675-77.

Glenn asserts, for the purposes of this appeal, that the covenant not to execute is not a part of the record and cannot be considered. We reject Glenn's assertion on this point. The covenant not to execute was filed during the district court proceedings and is included several times in the record on appeal.

We also reject Glenn's claim that this matter was decided by the district court when it denied Aetna's motion to dismiss the garnishment proceedings, and the assertion that Aetna cannot raise it at this time. The issue raised by Aetna in its motion for summary disposition was not addressed by the court decision referred to by Glenn. The court below ruled that Glenn was not impermissibly attempting to garnish his own property. The question raised here is whether the terms of the covenant relieved Fleming of any liability for payment of the judgment against him and, therefore, eliminated a requirement which was necessary in order for Aetna to be liable for excess payments.

Glenn would convince us that he is proceeding under the garnishment statutes and not on the basis of the covenant not to execute. This fact is not disputed by Aetna; however, it is also

not helpful to Glenn when discussing the *Heinson* reasoning and results.

The essential facts in *Heinson* and the present case appear to be identical. In both cases there is a plaintiff with a judgment against an insured party in excess of the limits of the insurance policy. There is also a question of whether the insurance company acted in bad faith by not settling the plaintiff's case against the insured. In both cases the plaintiff has entered into a covenant releasing the insured from any liability for the judgment, and has further sought to collect the amount from the insurance company through garnishment.

A plain reading of the covenant not to execute refutes Glenn's argument that Fleming continues to have full liability for the excess judgment and has suffered real damages. In the covenant, Glenn agrees not to execute upon or impose liens upon any property of Fleming, but to collect the judgment against Aetna by pursuing Fleming's contract rights with Aetna under the insurance policy. This is the same type of agreement dealt with in *Heinson*. We conclude that Fleming has no actual damages because he is not liable for the payment of any judgment to Glenn. Under the holding of *Heinson*, Aetna would therefore not be liable for any payment of the excess judgment, regardless of whether it acted in bad faith during settlement negotiations or not. Under the *Heinson* reasoning, Glenn is able to try to collect the excess judgment by garnishment, but the existence of the non-liability covenant with the insured nullifies the basis for the garnishment.

We conclude that the *Heinson* ruling applies to this case and provides a basis for disposing of this appeal, and we therefore affirm the rulings of the trial court so far as this issue is concerned.

(2) DID THE DISTRICT COURT ERR IN DENYING GLENN'S MOTION FOR SUMMARY JUDGMENT?

After the judgment against Fleming had been rendered and the garnishment proceedings initiated, Aetna filed a third-party petition against its attorney, alleging that he had been negligent in handling the defense of Fleming in the lawsuit filed by Glenn.

Glenn then filed a motion for summary judgment in the garnishment action, arguing that Aetna had admitted to negligently defending the claim against Fleming because its attorney was the

agent of Aetna and Aetna was therefore ultimately responsible for the negligent acts which it claimed its attorney had committed.

Aetna countered by stating that it was not vicariously liable for any negligence on the part of its attorney. It pointed out that in its claims against its attorney, it was stated that the pleading involved was hypothetical and did not constitute an admission. Aetna also contended that many genuine issues of material fact remained to be resolved, including questions of negligence, bad faith, causation, agency, and vicarious liability.

The district court denied Glenn's motion for summary judgment, finding that there were material issues of fact remaining regarding the defense of Aetna. Glenn appeals this decision.

Summary judgment is appropriate when there is no genuine issue of material fact remaining and a party is entitled to judgment as a matter of law. K.S.A. 60-256(c). In considering a motion for summary judgment, the trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal, we apply the same rule. *Bacon v. Mercy Hospital of Ft. Scott*, 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

We conclude that the district court did not err in refusing to grant summary judgment to Glenn. Glenn's summary judgment motion relied solely on the fact that Aetna was suing its attorney for negligence. Aetna's pleading against its attorney was phrased carefully so as not to admit to any negligence. In addition, Aetna's response raised several other possible defenses to the garnishment action which were based on actions by Glenn and Fleming. We agree with the trial court that summary judgment would not have been proper with these issues unresolved.

(3) WHAT AMOUNT OF INTEREST SHOULD AETNA PAY?

Glenn stated, in his suggestion for the journal entry after summary judgment was granted in the garnishment proceedings, that judgment should be entered against Aetna "for the sum of $25,000 with interest at the legal rate from the date of the entry of judgment in this case until paid."

The district court's order states that judgment is entered against Aetna "for the sum of $25,000 with interest from the date of this judgment on the garnishment action at the legal rate until paid."

Glenn maintains that Aetna should be liable for interest on the entire amount of the $1,050,000 judgment from the date when the judgment was entered. Glenn bases his argument on a provision in Aetna's insurance policy and on the ruling by the Kansas Supreme Court in *Stamps v. Consolidated Underwriters*, 208 Kan. 630, 493 P.2d 246 (1972).

Some question exists as to whether Glenn's letter to the court limits the interest request to the $25,000 policy limit amount.

We conclude that the letter presented a sufficient claim for interest based on the insurance contract.

Given this conclusion, the language of the insurance policy will determine whether interest on the excess part of the judgment must be paid. 208 Kan. 630, Syl. ¶ 1.

"If the language of a policy of insurance is clear and unambiguous, the words are to be taken and understood in their plain, ordinary and popular sense, and there is no need for judicial interpretation or the application of rules of liberal construction; the court's function is to enforce the contract according to its terms." *American Media, Inc. v. Home Indemnity Co.*, 232 Kan. 737, Syl. ¶ 5, 658 P.2d 1015 (1983).

Aetna's policy provides for payment of "all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon."

The language plainly contemplates that the interest will be paid on the entire judgment, including the part of it in excess of the policy limits. Aetna does not dispute the language in its policy, but argues that it is not liable for interest on the entire judgment because it has repeatedly offered to pay its policy limits. Glenn contends that all of Aetna's offers were conditional and were made to settle the entire claim. The record clearly supports Glenn's contention on this issue.

The Kansas Supreme Court, in *Stamps*, stated:

"We are persuaded the language in the interest clause means what it says and means what a substantial segment of the insurance industry says it means, that is, irrespective of principal policy limits, the term *judgment* refers to the entire or whole judgment and not something less. This view is consonant with reason and justice and we hold the trial court properly ruled that appellant owes interest on the entire amount of the judgments rendered against Landwehr." 208 Kan. at 635.

The theory supporting the conclusion reached in the *Stamps* case is based on several grounds. One is that the language of the policy creates liability for interest on the entire judgment. The insurer in this case, and in other cases, has drawn the policy without qualifications as to the term judgment. Also, under the terms of the policy, the insurer has complete control of any litigation from which it might incur liability. Thus, the insurer is responsible for settlement negotiations, any delays which might cause an accumulation of interest, and the final discharge of its obligations under the policy. Several courts have concluded that the insurer should therefore bear the expenses of any such delay. *Underwood v. Buzby*, 236 F.2d 937 (3d Cir. 1956); *Wilkerson v. Maryland Cas. Co.*, 119 F. Supp. 383 (E.D. Va. 1953), *aff'd* 210 F.2d 245 (4th Cir. 1954); *Highway Casualty Company v. Johnston*, 104 So. 2d 734 (Fla. 1958); *River Valley Cartage Co. v. Ins. Co.*, 17 Ill. 2d 242, 161 N.E.2d 101 (1959).

Aetna admitted that it owed the $25,000 but conditioned its payment on some other party giving up some right or agreeing to some other condition. This conduct is not consistent with the language of its own policy. At oral argument it was revealed that no money was paid into court until shortly before oral argument.

We conclude that the interest judgment ruling of the trial court should be reversed and, further, that Aetna be ordered to pay interest on the entire verdict rendered against Fleming from the date of that judgment until the date the policy limit was paid to the court.

Affirmed in part, reversed in part, and remanded with directions.