(783 P.2d 1321)
No. 63,733

GERRY L. MARSHALL, *Appellant,* v. CARL C. DONNELLI and MILLER-DONNELLI AGENCY, INC., *Appellees.*

Opinion filed December 29, 1989.

*C. Stanley Nelson,* of Hampton, Royce, Engleman & Nelson, of Salina, for appellant.

*A. Bradley Bodamer* and *Kristine A. Larscheid,* of Morrison, Hecker, Curtis, Kuder & Parrish, of Overland Park, for appellee.

Before LARSON, P.J., GERNON, J. and PAUL W. CLARK, District Judge, assigned.

GERNON, J.: Gerry L. Marshall appeals the trial court ruling concerning the duty of an insurance agent when a policyholder cancels an insurance contract and purchases another policy from a different company, thus affecting the underlying coverage requirements of an umbrella liability policy.

Dr. and Mrs. Philip Wolfram purchased an umbrella liability policy, issued by St. Paul Fire & Marine Insurance Company, through the Miller-Donnelli Agency, Inc. This liability policy had a limit of $1,000,000 and required the insured to have underlying automobile liability coverage of $250,000 for bodily injury for each person. The requirements of underlying coverage were clearly

stated in the policy and on the front page of the renewal declaration.

The Miller-Donnelli Agency also sold the Wolframs an automobile liability policy issued by Western Casualty & Surety Company, which had policy limits of $250,000 for bodily injury for each person.

On September 24, 1985, Mrs. Wolfram, responding to solicitations received in the mail, applied for an automobile liability insurance policy from Wausau Underwriters Insurance Company. On the same day, she called the Miller-Donnelli Agency and told an agent that Wausau had quoted her a price for "identical coverage" which cost $200 less for a six-month period than the insurance purchased through the Miller-Donnelli Agency and that she wanted to cancel the Western automobile policy. The agent persuaded her to let the policy lapse instead of cancelling it. He did not ask Mrs. Wolfram what she meant by "identical coverage." The umbrella liability policy was not discussed in this telephone conversation.

On October 13, 1985, Mrs. Wolfram sent the Miller-Donnelli Agency a note asking that all of the Wolfram's automobile insurance be cancelled as of that date because they had other coverage dating from September 28, 1985. On October 14, 1985, she called the agency and left a message to cancel the insurance on all their automobiles. The Miller-Donnelli Agency complied and cancelled the Western automobile policy.

The automobile liability policy obtained by the Wolframs from Wausau had policy limits of $100,000 for bodily injury for each person. This policy plainly did not satisfy the requirements of the umbrella liability catastrophe policy, and left a gap in coverage of $150,000.

On October 30, 1985, Dr. Wolfram and Sandra Marshall, Gerry Marshall's wife, were killed in an automobile collision. Gerry Marshall filed suit against the estate of Dr. Wolfram. The parties and insurance companies entered into a settlement agreement. Wausau paid $100,000 to Marshall in full satisfaction of its obligation. Judgment was entered in the amount of $361,000. Of this amount, St. Paul paid $111,000 and agreed to make future payments with a present value of $100,000. The gap of $150,000 was left unsatisfied, and Marshall agreed not to make any attempt

to collect it from Wausau or St. Paul. The estate of Dr. Wolfram had no assets to satisfy the $150,000 judgment. Marshall signed a covenant not to execute against Dr. Wolfram's estate and was assigned all rights and causes of action which the estate may have against the Miller-Donnelli Agency, Carl Donnelli, their agents, servants or employees, and their insurance carriers.

Marshall then filed the present action against Carl Donnelli and the Miller-Donnelli Agency alleging that the agency had negligently cancelled the Western automobile liability policy without ascertaining that the other coverage obtained by the Wolframs would comply with the requirements of the umbrella liability catastrophe policy. Marshall also alleged that the agency had breached its contract to procure and maintain the umbrella policy and all underlying required policies. The district court sustained a motion for summary judgment filed by Donnelli and the Miller-Donnelli Agency, finding that the agency did not owe a duty to the Wolframs to inquire whether their new automobile policy was compatible with their umbrella policy when the Wolframs did not seek any advice. We agree.

The issue is whether an insurance agency has an affirmative duty, when it is told to cancel an automobile policy, to check as to whether a new automobile policy purchased from another agency meets the terms of an umbrella policy for minimum underlying coverage requirements.

Marshall cites several cases which he claims establish that the agency owed a duty to the Wolframs to ascertain that their new policy had the required limits before cancelling their automobile policy. However, we conclude that none of the cases cited by Marshall is similar to the present case, and the cases cited do not establish any such duty. The cases cited by Marshall involve situations where an agency procured an underlying policy which did not meet the coverage requirements of an umbrella policy also procured by the agency. In the present case, the Miller-Donnelli Agency properly procured the policies it handled. The Miller-Donnelli Agency had no connection with the Wausau policy.

A Kansas case cited by Marshall, *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 498 P.2d 265 (1972), is also distinguishable from the present case in that it recognizes

the duty of a broker or agent to procure insurance for another. This is not a procurement case and therefore *Keith* is not applicable.

A case which is directly on point is *Blonsky v. Allstate Ins.*, 128 Misc. 2d 981, 491 N.Y.S.2d 895 (Sup. Ct. 1985). In *Blonsky*, the plaintiff had dealt with one insurance broker for 28 years and had in effect a $1,000,000 umbrella policy which required underlying automobile liability coverage of $300,000, and an Aetna automobile insurance policy with a limit of $300,000. The plaintiff obtained a new primary automobile insurance policy with limits of $100,000 from another broker and cancelled the Aetna insurance policy with the $300,000 limit. The plaintiff was later involved in an automobile accident and discovered that there was a $150,000 gap in his insurance coverage. He sued his original insurance broker to recover the amount of the gap. The New York court found that the broker had no continuing duty to advise and guide the insured after the broker had properly obtained the insurance requested.

The ruling of the New York case appears to be fair and reasonable, and we adopt its logic and reasoning. Kansas courts also have commented on the limited role of the insurance agent and the strict requirement for consideration to exist before there is a specific contractual duty on the part of an agent. *Marker v. Preferred Fire Ins. Co.*, 211 Kan. 427, 431-33, 506 P.2d 1163 (1973). There is simply no support for the duty Marshall argues ought to be imposed on an insurance agent or broker.

Although not raised by the parties, we note that the case of *Heinson v. Porter*, 244 Kan. 667, 772 P.2d 778 (1989), may also be applicable to this case. *Heinson* primarily concerned wrongful conduct on the part of an insurer and a judgment in excess of the policy limits; however, the Kansas Supreme Court also discussed assignment of claims and agreements releasing the original holder of the claim from liability. The language of *Heinson* appears to indicate that there can be no recovery on an assigned claim when the party from whom the claim was assigned has been released from liability and from the possibility of actual damages through a covenant not to execute or similar agreement. 244 Kan. at 675-77. Under this reasoning, the Miller-Donnelli Agency

would not be liable to Marshall because the Wolfram estate is no longer liable to Marshall.

Affirmed.