IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,348

CATHY L. STROUD,
*Appellant,*

v.

OZARK NATIONAL LIFE INSURANCE CO. and STEPHEN I. GUINN,
*Appellees.*

SYLLABUS BY THE COURT

1.

K.S.A. 2024 Supp. 60-217 requires that an action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced. A substantive right to recover in a particular action is neither enlarged nor restricted by the real party in interest statute.

2.

To establish a breach of fiduciary duty, a plaintiff must prove: (1) the existence of a duty arising from a fiduciary relationship; (2) a breach of duty; and (3) an injury resulting proximately from the breach of duty.

3.

Defining the essential characteristics of a fiduciary relationship and the duties that arise from those relationships presents a question of law. Determining whether the facts establish those essential characteristics presents a question of fact that, in the context of a summary judgment dispute, requires courts to resolve all facts and inferences in favor of the party against whom the ruling is sought.

1

4.

A fiduciary duty arises when one party is in a position of peculiar or special confidence that allows the person to have and exercise influence over another. In a fiduciary relationship, the property, interest, or authority of the other is generally entrusted to the fiduciary.

5.

A fiduciary duty may arise as a matter of law or as a question of fact when implied in law based on the factual situation surrounding the parties' transactions and relationships.

6.

Those who are competent and able to protect their interests may not abandon all caution and responsibility for their own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the person alleged to be a fiduciary.

7.

Under Supreme Court Rule 8.03(b)(6)(C)(i) (2024 Kan. S. Ct. R. at 56), the failure to raise adverse rulings or questions not addressed through a petition, cross-petition, or conditional cross-petition for review usually means the question is unpreserved and will not be considered. But plain errors may be considered.

8.

Plain error is an error that is so obvious and prejudicial that an appellate court should address it despite the parties' failure to raise a proper objection at trial.

9.

The plain error exception in Supreme Court Rule 8.03(b)(6)(C)(i) may allow the Kansas Supreme Court to review errors not preserved through a petition, cross-petition, or conditional cross-petition for review when the point is a necessary analytical step such that a failure to discuss the question could lead to confusing or misleading precedent.

10.

Summary judgment should be rendered forthwith if pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact.

11.

Kansas has defined the elements of negligent misrepresentation by adopting Restatement (Second) of Torts § 552, which is limited to situations in which a defendant supplies false information. The Restatement and Kansas caselaw distinguish the torts of misrepresentation by affirmative statement and misrepresentation by silence or nondisclosure.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 10, 2022. Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Oral argument held April 11, 2023. Opinion filed February 28, 2025. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Roger K. Wilson*, of Arn, Mullins, Unruh, Kuhn & Wilson, LLP, of Wichita, argued the cause and was on the briefs for appellant.

*William E. Hanna*, of Stinson LLP, of Wichita, argued the cause, and *Christina J. Hanson*, of the same firm, was with him on the briefs for appellee.

3

The opinion of the court was delivered by

LUCKERT, C.J.: Cathy L. Stroud sued Ozark National Life Insurance Company and its agent and manager Stephen Guinn for negligent misrepresentation and breach of fiduciary duty after her husband, Alan Stroud, converted his term life insurance policy to a whole life policy that reduced the death benefit provided to her as the sole beneficiary. Her lawsuit ended in the district court when the district court judge granted the insurance company and its agent summary judgment. Cathy appealed to the Court of Appeals, which affirmed the district court's judgment. *Stroud v. Ozark National Life Ins. Co.*, No. 124,348, 2022 WL 2114769, at *5 (Kan. App. 2022) (unpublished opinion).

On review of that decision, we affirm the district court and the Court of Appeals.

FACTS AND PROCEDURAL BACKGROUND

Alan bought a 20-year term life insurance policy with a $60,000 death benefit from Ozark National Life Insurance agent Gene Spoon in 2002. Alan was the owner of the term policy, and he named Cathy as his sole beneficiary.

The policy allowed Alan to convert the term policy to a whole life insurance policy before the end of the 20-year term. If he did not convert the policy, his premium would increase sharply to as much as a specified "guaranteed maximum" amount. At the time of purchase, Ozark National provided Alan with a Statement of Policy Cost and Benefit Information and a Life Insurance Policy Illustration, which he signed and received for his records. Copies of these documents were exhibits attached to Ozark's motion for summary judgment. They listed the maximum premiums throughout the 20-year term, in year 20, and in later years.

4

About three years before the end of the 20-year term, Alan suffered a hemorrhagic stroke. The stroke affected his coordination, reading, and, in Cathy's words, his ability "to deal with numbers." Doctors discovered Alan needed heart surgery that would require travel to Houston, Texas. The trip and surgery were to occur as soon as Alan recovered sufficiently from his stroke.

While Alan was awaiting the opportunity to go to Houston, Stephen Guinn called the Strouds' home. Cathy answered the phone. Guinn introduced himself as an agent for Ozark National. (We will use Ozark National when referring to the insurance company and Ozark when referring collectively to Ozark National and its agent Guinn.) Guinn explained he was calling because the agent who sold the policy had not called for a while to visit with Alan about his term life insurance policy. Cathy asked whether the selling agent had retired. Guinn did not answer. Cathy told Guinn about Alan's imminent surgery. She said they would need to meet as soon as possible if they needed to discuss the policy.

The next day, Guinn went to the Stroud home and talked with Alan and Cathy. By the end of the meeting, Alan signed paperwork converting his term life insurance policy with a death benefit of $60,000 to a whole life insurance policy with a $30,000 death benefit. Alan again named Cathy as the sole beneficiary. He made his first payment on the new policy, and Ozark National later confirmed the conversion and informed Alan "[t]he benefits associated with the term coverage are now null and void." It refunded the unearned premium on the term policy.

Alan went to Houston and had surgery but died a few months after the new whole life insurance policy went into effect. After Ozark National paid the $30,000 benefits on the whole life policy, Cathy wrote the Ozark National legal department requesting payment of the $60,000 benefit she would have received if Alan had not converted the policy. Cathy claimed that Alan would not have changed the policy but for Guinn's advice that was contrary to the Strouds' best interests. Ozark National declined Cathy's request.

Cathy then filed suit. After the parties completed discovery, a pretrial order was entered. The order sets out Cathy's contentions and theories of recovery, stating that Guinn, as Ozark's agent, "made negligent misrepresentations and breached his fiduciary duty to Plaintiff and her now deceased husband, Alan C. Stroud, in May of 2019 when he convinced and allowed them to convert the existing $60,000.00 term life insurance policy on Mr. Stroud's life to a $30,000.00 whole life insurance policy." It added that the Strouds placed special trust and confidence in Guinn when he "advised, sold and allowed them to convert" the policy and that, "[i]n equity and good conscience, Defendant Guinn was bound to act in good faith and with due regard to the best interests of the Plaintiff and her husband."

Citing Cathy's contentions in the pretrial order, Ozark moved for summary judgment arguing her claims failed as a matter of law. The district judge granted the motion. Cathy appealed to the Court of Appeals, which affirmed the district judge's decision as right for the wrong reasons. See *Stroud*, 2022 WL 2114769, at *5.

Cathy timely petitioned for this court's review. We granted her request and have jurisdiction under K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions on petition for review).

ANALYSIS

An appellate court's review of a district judge's decision to grant summary judgment is guided by long-established principles that govern the district judge's consideration of the motion:

6

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.'" *Schreiner v. Hodge*, 315 Kan. 25, 30, 504 P.3d 410 (2022) (quoting *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 [2018]).

Here, Cathy has alleged that Guinn negligently misrepresented information about Alan's life insurance options. "While summary judgment is rarely appropriate in negligence cases, it is proper if a plaintiff fails to establish a prima facie case demonstrating the existence of [the] four elements" of negligence: a duty, a breach of that duty, an injury, and proximate cause. *Montgomery v. Saleh*, 311 Kan. 649, 653, 466 P.3d 902 (2020). A plaintiff establishes a prima facie case by presenting "'evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict in favor of the plaintiff on the issue it supports.'" *Robbins v. City of Wichita,* 285 Kan. 455, 470, 172 P.3d 1187 (2007) (quoting *Baker v. City of Garden City*, 240 Kan. 554, 557, 731 P.2d 278 [1987]). A plaintiff may establish a prima facie case using circumstantial evidence. And a plaintiff need "not exclude every other reasonable conclusion as long as it forms a basis from which a jury could draw a reasonable inference." *Montgomery,* 311 Kan. at 663.

Appellate courts apply the same rules when reviewing an order granting summary judgment and have unlimited review over a district judge's summary judgment orders. *Schreiner*, 315 Kan. at 30; *Fairfax Portfolio v. Carojoto*, 312 Kan. 92, 94, 472 P.3d 53 (2020).

7

## 1. *Defining a Real Party in Interest*

Throughout this litigation, Ozark has asserted that Cathy is not the real party in interest to bring this lawsuit, meaning she is not the right person to bring this case. See K.S.A. 2024 Supp. 60-217. It contends that, if a claim is to be made, it needs to be prosecuted by a representative of Alan's estate or someone else on his behalf because Alan was the person who contracted with Ozark and owned the policy. Ozark asserts Cathy lacks real-party-in-interest status even though she was the sole beneficiary because Ozark National contracted with Alan and thus she was not the policy owner, had no duty to pay the premiums, and lacked control over Alan's choice of a beneficiary.

Despite knowing that Ozark questioned her ability to assert claims on Alan's behalf, Cathy failed to preserve her ability to do so. And in fact, she denied she was asserting any claims on Alan's behalf in her response to Ozark's summary judgment motion. So, as the case is presented, neither Alan nor his estate are a party, and Cathy waived arguments that claims on Alan's behalf are at issue. She thus has not preserved any claims on Alan's behalf and no claims on his behalf are before us in this appeal. See *In re N.E.*, 316 Kan. 391, 407-08, 516 P.3d 586 (2022) (discussing need to preserve arguments); see also Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 35).

Cathy instead argues she was harmed by Guinn's actions and that duties were owed to her (or to her and Alan jointly) and she thus has a right to proceed as a beneficiary under the contract between Alan and Ozark. To explore whether she does, we begin by examining Kansas statutes and caselaw. Both the interpretation of the real party in interest statute—K.S.A. 2024 Supp. 60-217—and whether Cathy is a real party in interest present questions of law subject to our unlimited review. *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020).

8

Under K.S.A. 2024 Supp. 60-217, "[a]n action must be prosecuted in the name of the real party in interest." But the statute does not define "real party in interest." It does list some persons who "*may* sue in their own names without joining the person for whose benefit the action is brought." (Emphasis added.) K.S.A. 2024 Supp. 60-217(a)(1). The list includes an executor, an administrator, "a party with whom or in whose name a contract has been made for another's benefit," and "a party authorized by statute." K.S.A. 2024 Supp. 60-217(a)(1).

The Court of Appeals interpreted the list in K.S.A. 2024 Supp. 60-217(a)(1) as exclusive and concluded this means the Legislature intended a party must use an executor or an administrator of the decedent's estate when suing on behalf of a decedent who made a contract for another's benefit. See *Stroud*, 2022 WL 2114769, at *14. But they cite no authority for reading the list as exclusive, and K.S.A. 2024 Supp. 60-217(a)(1)'s wording does not support such a narrow interpretation.

Instead, the word "may" usually implies something is permissive, optional, or discretionary, and it will not be read "'as a word of command unless there is something in context or subject matter of [the statute] to indicate that it was used in such sense.'" *State ex rel. Secretary of SRS v. Jackson*, 249 Kan. 635, 642, 822 P.2d 1033 (1991); Black's Law Dictionary 1169 (12th ed. 2024) (defining "may" as "[t]o be permitted" but acknowledging some courts have held "may" is synonymous with "shall" when necessary to implement legislative intent). This permissive language suggests the listed individuals *may* bring an action on behalf of those who benefit from the action in the sense that doing so is not procedurally objectionable. But the statute does not require them to be the plaintiffs.

Ozark argues, however, that in this situation the Legislature did not intend a permissive use of "may" and thus it should be interpreted as a "shall." It also contends that Alan's estate is the real party in interest because he owned the policy and the plain

9

language of K.S.A. 2024 Supp. 60-217 allows—indeed, requires—the estate to seek the life insurance payment on behalf of the beneficiary (Cathy). We reject this argument because Kansas caselaw supports our plain language reading of "may" in K.S.A. 2024 Supp. 60-217 as permissive.

We have held that K.S.A. 2024 Supp. 60-217 requires that "'[a]n action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced,'" but that "substantive right to recover in a particular action is neither enlarged nor restricted by the provisions of the real party in interest rule." *Torkelson v. Bank of Horton*, 208 Kan. 267, 270, 491 P.2d 954 (1971). While a third-party representative listed in K.S.A. 2024 Supp. 60-217(a) may bring the action, others may have a substantive right to recover.

We thus must look at the substantive law. When we do, we find at least colorable arguments that Cathy was a real party in interest. See *Pizel v. Zuspann*, 247 Kan. 54, Syl. ¶ 4, 795 P.2d 42, *modified on other grounds* 247 Kan. 699, 803 P.2d 205 (1990) (trust beneficiaries allowed to sue attorney who drafted trust agreement); *In re Hilliard's Est.*, 172 Kan. 552, 554, 241 P.2d 729 (1952) (predating adoption of K.S.A. 60-217; holding widow was the real party in interest entitled to sue to enforce alleged oral contract between her deceased husband and her son that obligated deceased husband to leave farm operated by son to widow).

Because the substantive law must be considered, we move to a discussion of Cathy's claims and the law that surrounds those claims. Only if the claims survive summary judgment on substantive grounds will we delve into whether Cathy is the real party in interest.

10

## 2.  *Breach of Fiduciary Duty*

Turning to Cathy's claim of breach of fiduciary duty, to establish a prima facie case she must prove:  (1) the existence of a duty arising from a fiduciary relationship; (2) a breach of duty; and (3) an injury resulting proximately from the breach. *Schneider v. The Kansas Securities Comm'r*, 54 Kan. App. 2d 122, 152, 397 P.3d 1227 (2017). The district judge and the Court of Appeals focused on the first of these requirements, examining whether Cathy established a duty arising from a fiduciary relationship.

Ozark argued Cathy failed to present facts that gave rise to a fiduciary duty, and the district judge identified two ways Cathy failed to counter this argument. First, the judge cited *Spencer v. Aetna Life and Casualty Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980), which the judge read as broadly holding that an insured cannot bring a claim against an insurance company and its agents for breach of fiduciary duty. Second, the judge quoted *Linden Place v. Stanley Bank*, 38 Kan. App. 2d 504, Syl. ¶ 5, 167 P.3d 374 (2007), for its holding that a plaintiff cannot "unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." He then determined that "Plaintiff offers no information that Defendant Guinn made any conscious assumption that he was forming a fiduciary relationship with Mr. Stroud or Plaintiff."

### *Standard of Review*

Our focus is thus also on whether Guinn owed a duty to Cathy. Legal duties can arise by express contractual provision, by statute, or by court-made common law. *Wicina v. Strecker*, 242 Kan. 278, 286, 747 P.2d 167 (1987). Here, Cathy alleges Guinn's duties to the Strouds arose by common-law because a fiduciary relationship arose from the facts and circumstances of their relationship. See *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235 (1982).

11

Generally, the question of whether a duty arises presents a question of law. *Granados v. Wilson*, 317 Kan. 34, 43, 523 P.3d 501 (2023). But we have recognized that "'[t]he existence or non-existence of a confidential or fiduciary relationship [that gives rise to the fiduciary duty] is an evidentiary question or finding of fact which must be determined from the facts in each case.'" *Olson v. Harshman*, 233 Kan. 1055, 1057, 668 P.2d 147 (1983). Without more explanation, these statements seem to conflict.

Other courts have resolved the tension inherent in these two general rules by holding that the determination of whether there is a fiduciary duty presents a mixed question of law and fact. See, e.g., *Clyde v. Hodge*, 460 F.2d 532, 535 (3d Cir. 1972). The questions of law presented relate to defining the essential characteristics of a fiduciary relationship and the duties that arise from those relationships. These questions are answered by the judge. Cf. *Granados*, 317 Kan. at 43-46 (discussing division between legal questions of law and factual questions in context of insured's duty when handling claim against insured). But whether the facts establish the essential characteristics of a fiduciary duty presents a question of fact that, in the context of a summary judgment dispute, requires us to resolve all facts and inferences in favor of the party against whom the ruling is sought. *Schreiner*, 315 Kan. at 30. Here, that means we resolve facts and inferences in Cathy's favor to see whether the uncontroverted facts present a question for a jury to resolve.

As we discuss the parties' arguments, we will note the application of these standards.

*First-Party Claim Against Insurance Company*

The first reason the district judge used to reject Cathy's position is one that was ruled on as a matter of law by the district judge. The district judge accepted Ozark's

argument that *Spencer*, 227 Kan. 914, broadly held an insurer can owe a fiduciary relationship to the insured only in a third-party situation (meaning where a third-party makes a claim against the insured) and never owes such a duty in a first-party situation (meaning where a claim is brought against the insurance company by the insured). The judge thus held that Cathy had no legal basis for her first-party claim against Ozark.

On appeal, the Court of Appeals panel rejected the district judge's ruling that *Spencer* foreclosed Cathy's fiduciary duty claim. The panel held the judge's reading of *Spencer*, which adopted Ozark's argument, was overly broad because *Spencer* involved settling claims and "does not involve procuring insurance for the insured or giving advice to an insured about insurance policies." 2022 WL 2114769, at *8.

Ozark did not cross-petition or conditionally cross-petition for review to ask us to consider this holding even though those filings are necessary to preserve for Supreme Court review any Court of Appeals' holding adverse to the party's position. See Supreme Court Rule 8.03(c)(3), (c)(4) (2024 Kan. S. Ct. R. at 57); *State v. Cantu*, 318 Kan. 759, 763, 547 P.3d 477 (2024). And issues raised before the Court of Appeals but not decided must also be raised in a petition or cross-petition for review to be considered. See Supreme Court Rule 8.03(c)(3)(B), (c)(4)(B).

"The court, however, may address a plain error not presented." Supreme Court Rule 8.03(b)(6)(C)(i) (2024 Kan. S. Ct. R. at 55); *Quinn v. State*, 317 Kan. 624, 626, 537 P.3d 94 (2023); *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1131, 442 P.3d 509 (2019); 309 Kan. at 1166 (Luckert, J., dissenting) (criticizing majority's application of plain error provision). And we have recognized other limited exceptions. See *State v. Sinnard*, 318 Kan. 261, 543 P.3d 525 (2024) (even though party failed to preserve its lack-of-contemporaneous-objection argument as required under Rule 8.03, K.S.A. 60-404 prevented relief and controlled over the petition for review rule); *Khalil-Alsalaami v. State*, 313 Kan. 472, 520, 525, 486 P.3d 1216 (2021) (where cumulative error issue

included consideration of an unpreserved claim of error, unpreserved error considered as part of preserved cumulative error analysis).

Here, Rule 8.03(c)(3) applies without exception, meaning any possible error in the panel's ruling is unpreserved and we take as settled that the district judge erred in granting summary judgment based on *Spencer*. See 318 Kan. at 763 (Court of Appeals holdings not subject to review deemed settled).

*Failure to Prove Conscious Assumption of Fiduciary Duties*

We next consider whether the district judge erred in holding that Cathy failed to present evidence that Guinn consciously assumed fiduciary duties. See *Linden Place*, 38 Kan. App. 2d 504, Syl. ¶ 5. Before discussing that point, we discuss some general principles about fiduciary duties that relate to the parties' arguments. In doing so, we in essence draw the skeletal requirements for proving the existence of a fiduciary duty; this presents a question of law. Cf. *Granados*, 317 Kan. at 43.

In general,

"[t]he concept of the fiduciary duty is an equitable one and while no precise definition may be given and strict parameters of the relationship cannot be established for use in all cases, there are certain broad general principles which should be considered in making the determination of whether a fiduciary relationship exists in any particular factual situation." *Denison State Bank*, 230 Kan. at 691-92.

A fiduciary duty arises when one party is in "a position of peculiar confidence" that allows the person to have and exercise influence over another. 230 Kan. at 691. "Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary." 230 Kan. at 692. Stated another way, a fiduciary duty "may exist under a variety of circumstances and does exist in cases where there has been a special

14

confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Brown v. Foulks*, 232 Kan. 424, 431, 657 P.2d 501 (1983).

Such a relationship can arise in two ways: as a matter of law and as a question of fact when "implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." *Denison State Bank*, 230 Kan. at 691.

Under the first avenue, the relationship is one in which the law requires one party to act as a fiduciary. Examples of intrinsically fiduciary relationships include those "created by contract such as principal and agent, attorney and client, and trustee and cestui que trust, for example, and those created by formal legal proceedings such as guardian and/or conservator and ward, and executor or administrator of an estate, among others." 230 Kan. at 691. Cathy does not argue an intrinsically fiduciary relationship existed between Guinn and her.

Perhaps that is because courts recognize as a matter of law that an insurance agent who solicits the purchase of an insurance policy does not establish a relationship that the law recognizes as inherently fiduciary. 1 Thomas & Mootz, New Appleman on Insurance Law § 2.05[2][c][ii] (Library ed. 2024); Richmond, *Insurance Agent and Broker Liability*, 40 Tort Trial & Ins. Prac. L.J. 1, 12 (2004). There are three primary reasons the law does not view the traditional relationship between an insured and an insurer and its agents as one with inherent fiduciary duties. We discuss these reasons even though Cathy does not assert such a relationship because they help inform the determination of whether the facts here put Guinn in a special relationship "of peculiar confidence" that gave rise to a fiduciary duty owed to her. *Denison State Bank*, 230 Kan. at 691-92.

15

The three reasons an insured-agent relationship is not viewed as intrinsically fiduciary when an agent is soliciting the purchase of a policy are that (1) "the agent generally represents the insurer," not the insured—that is, the insurer is the principal of the agent; (2) the "relationship between insurance agents and their clients is an ordinary business relationship"; and (3) a fiduciary duty "is inconsistent with the nature of the transaction. The purchase of insurance is typically an arms-length transaction, and applicants and insureds generally have no reasonable basis to repose special confidence or trust in agents with whom they deal." 1 New Appleman on Insurance Law § 2.05[2][c][ii]; see *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 958, 335 P.3d 1178 (2014) ("'Traditionally, an "agent" is the representative of the insurer, while the "broker" is the representative of the insured . . . .'"); 300 Kan. at 955-61 (discussing common-law principles of agency as applied to insurance situations).

But a special relationship can arise if the facts and circumstances reflect "[s]omething more than an ordinary insured/insurer relationship" sufficient "to create a 'special relationship.'" 3 Couch on Ins. § 46:61. Reflecting on the reasons a typical insurance agent-insured relationship is not fiduciary, facts and circumstances could establish a special relationship if the transaction is not an ordinary business relationship conducted at arm's length and Cathy had a reasonable basis to repose special confidence in Guinn and did so. As we explained in *Denison State Bank*, 230 Kan. at 696, those who are competent and able to protect their own interests "may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary."

Cathy contends her and Alan's interactions with Guinn created a special relationship different from the usual sales call by an insurance agent and fit within the second avenue for establishing a fiduciary relationship. She relies on the fact that Guinn

16

voluntarily undertook the task of "advising a present policyholder and the beneficiary regarding an existing term policy." He did so, she contends, by taking

> "it upon himself to call the Stroud's [*sic*], set up an appointment and at that appointment led them to believe the premiums on Mr. Stroud's existing term life insurance policy could increase when Mr. Stroud was summoned to Houston, Texas to undergo life and death surgery and ' . . . advised the Stroud's to convert the $60,000.00 term policy to the $30,000.00 whole life policy.'"

For support, Cathy notes that she and Alan put trust and confidence in Guinn. She also argues the words "trust" and "confidence" track with our statements in Kansas caselaw defining a fiduciary relationship. See, e.g., *Brown*, 232 Kan. at 430-31. But defining a fiduciary duty as one of trust and confidence does not mean "that any relationship or transaction in which one party reposes trust or confidence in another will establish a fiduciary or confidential relationship sufficient to impose an affirmative duty to disclose." 26 Williston on Contracts § 69:23 (4th ed.). Something more is required. See *Denison State Bank*, 230 Kan. at 696 (holding plaintiff's testimony "that he trusted and relied upon the Bank to furnish him complete, honest information" was insufficient to establish fiduciary relationship).

The district judge concluded that Cathy failed to establish the necessary something more and that no fiduciary relationship arose. In doing so, the judge focused on the principle that the nonfiduciary cannot unilaterally impose a fiduciary relationship on another without a conscious assumption of duty by the purported fiduciary. For support, he cited a Court of Appeals decision, *Linden Place*, 38 Kan. App. 2d 504, which in turn recited *Denison State Bank*'s statement of the principle. See *Linden Place*, 38 Kan. App. 2d 504, Syl. ¶ 5; 38 Kan. App. 2d at 510. The judge then concluded no facts supported that a special relationship arose because "Plaintiff offers no information that Defendant Guinn made any conscious assumption that he was forming a fiduciary relationship with Mr. Stroud or Plaintiff."

17

Cathy points out that the judge's conclusion ignores two statements of fact she presented in her reply to Ozark's summary judgment motion. In those she summarized Guinn's deposition testimony, given over objection not yet resolved. In Guinn's deposition, he answered "always" when asked if he believed he has "an obligation to act in the best interest of the people" he is calling on and he agreed to a question asking whether he thinks the people he calls on place special trust and confidence in his advice. Cathy argues these statements prove—or at least present a jury question about whether—a fiduciary duty arose.

On appeal, the Court of Appeals panel recognized this argument but ultimately determined Cathy had not established a prima facie case for breach of fiduciary duty. It reached this conclusion after holding that Cathy had to show that the Ozark National contract of insurance established a duty for it or its agent to advise the insured. 2022 WL 2114769, at *5-9.

The panel's analytical path to that conclusion began with an explanation that it understood Cathy to be relying on *Marshel Investments, Inc. v. Cohen*, 6 Kan. App. 2d 672, 683, 634 P.2d 133 (1981), for support of her allegation that Guinn owed a fiduciary duty to her. 2022 WL 2114769, at *8. The panel held the duty discussed in *Marshel Investments* did not apply under the facts, but it recognized that "[p]erhaps a liberal reading" of the decision "supports that Guinn formed a fiduciary relationship with Alan and Cathy." The panel declined such a liberal reading, however. 2022 WL 2114769, at *9.

Instead, the panel noted that various Court of Appeals panels had "consistently held" the *Marshel Investments* "holding meant that an insurance agent has a duty to act on explicit insurance requests from their clients" and had "consistently rejected" arguments that the holding meant "insurance agents have a duty to advise clients about their insurance-related choices." 2022 WL 2114769, at *9 (citing *Carpenter v. Bolz*, No.

18

101,679, 2010 WL 2977937, at *6-7 [Kan. App. 2010] [unpublished opinion] [duty to exercise reasonable care in procuring insurance is limited "to provid(ing) reasonable, prudent coverage *that is requested by the client*" (emphasis added)]; *Duncan v. Janosik, Inc.*, No. 99,459, 2009 WL 743579, at *3 [Kan. App. 2009] [unpublished opinion] [declining to recognize *ongoing duty* to notify insured of coverage lapse because agent had no duty to advise about insurance choices absent a specific agreement to do so]; *Benskin v. Anderson Insurance Agency, Inc.*, No. 86,976, 2002 WL 35657473, at *5-6 [Kan. App. 2002] [unpublished opinion] [recognizing broker has *no continuing duty* to advise about coverage unless an agreement to do so has been made]).

The panel then discussed *Marshall v. Donnelli*, 14 Kan. App. 2d 150, Syl. ¶ 1, 783 P.2d 1321 (1989), in which a different Court of Appeals panel held that "[*a*]*bsent a specific agreement to do so*, an insurance agent does not have a *continuing duty* to advise, guide, or direct an insured's coverage after the agent has complied with his obligation to obtain insurance coverage on behalf of the insured." (Emphases added.) The *Stroud* panel concluded this holding meant that no duty arose absent a contract to advise, and it went further by stating that contract must be the insurance contract:

> "This [statement that 'absent a specific agreement to do so' in *Marshall*] means that unless the insurance agent is contractually obligated to do so, an insurance agent has no fiduciary duty to advise the insured. See also *Duncan* [v. *Janosik, Inc*., No. 99,459, 2009 WL 743579, at *4 (Kan. App. 2009) (unpublished opinion)] (discussing *Marshel Investments, Inc.'s* explanation of an insurance agent's duty to advise as being based in contract). Thus, to successfully establish that an insurance agent violated a fiduciary duty by giving bad advice, the insured must prove that the agent was contractually obligated under his or her policy to give reasonable advice." 2022 WL 2114769, at *9.

The panel then observed that Cathy did not rely on Alan's life insurance contracts with Ozark National and, even if she did, his policy did not obligate Ozark National's agents to advise Alan or his beneficiary. And Cathy had no contract with Ozark. The panel

19

thus concluded Guinn owed no fiduciary duty to either Alan or Cathy and the district judge was correct in granting summary judgment. 2022 WL 2114769, at *10.

In urging us to reject that reasoning, Cathy argues the Court of Appeals misconstrued her argument because she is not relying on a continuing duty to advise and *Marshel, Marshall*, and the other cited cases address only that type of duty. 14 Kan. App. 2d 150, Syl. ¶ 1. But see *Granados v. Wilson*, 317 Kan. 34, 43, 523 P.3d 501 (2023) ("This framing of the issue reflects a recent tendency—which we noted in *Reardon v. King*, 310 Kan. 897, 904, 452 P.3d 849 (2019)—to characterize the legal duty in 'ever narrower and more particularized ways.' The problem with that approach is that 'duty rules are not meant to be fact specific. Rather, they are to set broadly applicable guidelines for public behavior.'").

According to Cathy, she presented sufficient evidence that a duty arose here because the uncontroverted facts showed that Guinn called and offered to meet with her and Alan to talk about Alan's current life insurance coverage and, during the ensuing meeting, offered advice that they convert the term policy to a whole life policy. In other words, according to Cathy, Guinn undertook the duty to advise the Strouds. To support her theory that Guinn's actions, combined with the Strouds' reliance on his advice, can create a fiduciary duty, she points to *Marshel Investments*' recognition that an action to recover for a breach of fiduciary duty can sound in either contract or tort. See 6 Kan. App. 2d at 683.

Cathy is correct in stating that *Marshel Investments* panel did note that a fiduciary duty action could be based on contract or tort principles. But it also observed that no Kansas case has engaged in a legal analysis of the source of the ability to bring an action on the alternative theories. The court continued by saying that "it might be said the duty is both an implied contractual term of the undertaking (contract duty) and a part of the fiduciary duty owed the client by reason of the principal-agent relationship arising out of

20

the undertaking (tort duty)." 6 Kan. App. 2d at 683. In essence, the *Marshel Investments* panel held that the fiduciary duty arose either directly or impliedly from contract terms, and it then extended an analysis emanating from contract law that has been used in other areas of insurance law to develop a tort cause of action. See, e.g., *Glenn v. Fleming*, 247 Kan. 296, 313, 799 P.2d 79 (1990) (considering claim of bad faith in settling insurance claim and noting that courts "have adopted, in our development of the substantive case law, the principle that the insurer's duties are contractually based and then approved a tort standard of care for determining when the contract duty has been breached").

The *Stroud* panel thus had a basis for its conclusion requiring some direct or implied basis in the contract for a duty. But, as we have discussed, the general body of law about fiduciary relationships has carved two distinct avenues—one based on relationships that are intrinsically fiduciary, including those based on duties imposed by contract—and the other that arises from assumption of a duty. Cf. Restatement (Second) of Torts, § 324A (recognizing party can assume a duty the breach of which can sound in negligence). The panel thus erred to the extent its holding recognized fiduciary duties between an insured and insurer could arise only if implied by a contract term. 2022 WL 2114769, at *9.

Besides fiduciary duties arising from contract, a fiduciary relationship may also exist between an insured and the insurer if the facts and circumstances create a special relationship of trust and confidence and the purported fiduciary consciously assumes to undertake fiduciary duties. See *Kaercher v. Sater*, 155 P.3d 437, 441-42 (Colo. App. 2006) ("Whether a special relationship has been formed turns on whether there is 'entrustment,' that is, whether the agent or broker assumes additional responsibilities."). Kansas courts and courts from other jurisdictions have recognized this path. See, e.g., *Denison State Bank*, 230 Kan. at 696 (one may not impose "fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary"); *Linden Place*, 38 Kan. App. 2d at 509 (discussing banking relationship,

21

which is not an intrinsically fiduciary relationship, and noting "[t]here is no contract or formal proceedings creating any fiduciary relationship" but holding that if bank official promised to look after the interests a fiduciary duty arose); see also, e.g., *Harts v. Farmers Ins. Exchange*, 461 Mich. 1, 10-11, 597 N.W.2d 47 (1999) (under the "special relationship" test, the general rule that an insurer's agent owes no fiduciary duty to insured may change under certain facts and circumstances, including when "the agent assumes an additional duty by either express agreement with or promise to the insured").

This conclusion does not mean, however, that the *Stroud* panel erred when it focused on *Marshall's* language requiring a "specific agreement," 14 Kan. App. 2d 150, Syl. ¶ 1, which can be found in other cases. That language covers a spectrum from contracts to express agreements that lack all elements of a contract (perhaps for lack of consideration). See *Harts*, 461 Mich. at 10. Regardless of whether an oral promise or a formal contract, our caselaw reveals the importance of an agreement to assume the fiduciary duty. *Linden Place* is one such case.

Linden Place, LLC, was the developer of a residential subdivision. Its representatives started negotiations with a building company for the sale of some lots upon the agreement the builder would construct model homes within a year. During negotiations for the sale, a subdivision representative questioned a bank officer about the reliability and viability of the builder, who was a customer of the bank. The officer assured the subdivision representative that the builder had the capability and funding to complete construction on the lots. The sale proceeded, and the builder used the bank for financing. It informed the bank representative that the subdivision owner had agreed to subordinate its interest in the property.

A few months later, subdivision representatives learned the builder might be using the loan proceeds to pay obligations other than construction costs related to the Linden Place development, jeopardizing the project and, in turn, the developer's subordinated

22

interest. The bank officer said he would investigate. Two days later he called and assured the subdivision representative that he had checked on the matter and was handling it. He also promised that expenditures would be monitored carefully. The facts thus revealed that the bank explicitly informed the representative it was assuming a duty to watch for activities contrary to the subdivision developer's interest. 38 Kan. App. 2d at 510-11.

Drawing conclusions from those facts, the *Linden Place* panel determined no facts supported a conclusion the bank assumed a fiduciary duty during the early stages of these exchanges—that is, during the negotiation period when its officer provided information and even when the subdivision representative made the initial inquiry about possible misappropriation of funds and the officer said he would investigate. The triggering point, the panel concluded, was when the bank officer expressly promised to closely monitor the builder's future expenditures. 38 Kan. App. 2d at 512. Only then, "from those remarks," could a reasonable person conclude "that the Bank was undertaking to look out for Linden Place's interests." 38 Kan. App. 2d at 512. And only with that promise could reasonable people abandon caution and responsibility for their own protection and rely on someone else to protect their interests. See *Denison State Bank*, 230 Kan. at 696. At that point a fiduciary relationship existed. *Linden Place*, 38 Kan. App. 2d at 512.

Here, Cathy has not presented facts establishing anything other than a normal business transaction between an insured and an insurance company. Guinn's cold call and request to meet is a common exchange in sales relationships, as is an attempt to sell a different product to an existing client. Cathy has never suggested that she lacked the ability to make business decisions or that anything about her conversations with Guinn should have put him on notice that she lacked the ability to competently make decisions. And the evidence that Cathy and Alan placed trust in Guinn along with his acknowledgement that clients place trust in him falls short of creating a special or peculiar relationship or of showing that Guinn consciously accepted special and peculiar duties.

23

Rather, as described by Guinn, that was the circumstance "always." Nothing suggests that Guinn promised to protect the Strouds' interests.

In considering whether the uncontroverted facts presented here present a jury question, we have found numerous cases in other states affirming a summary judgment decision when the summary judgment record did not include evidence of a conscious assumption of duty. For example, in *Kaercher*, 155 P.3d 437, the Colorado Court of Appeals addressed a situation where the plaintiff's petition alleged that an insurance agent "'holds himself to be knowledgeable about selling insurance coverages, and regularly, in the course of his business, informs, counsels and advises clients of their insurance needs,'" which is what Guinn said he does. The court concluded these allegations did "not establish a duty on the part of [the agent] beyond the standard insured-agent relationship and do not set forth factors that would create a special relationship of entrustment." 155 P.3d at 442 (collecting similar cases from other states).

Likewise, in *Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 F. Supp. 2d 371 (E.D. Pa. 1998), an insurance agent offered advice on how to attain the goals of a husband and wife who were seeking life insurance coverage for the husband. The couple twice met with the agent and discussed the possibility of replacing an existing policy insuring the life of the husband with a different policy recommended by the agent. The couple shared information about their finances and made clear they wanted sufficient coverage so the wife would not have to work if the husband died. After the husband's death, the widow realized the policy amount was insufficient to support her and her children. She filed a lawsuit, claiming violations of Pennsylvania statutes and seeking monetary recovery under several common-law tort theories. The insurance company sought summary judgment, and the court considered whether the agent's representations of expertise, his superior knowledge of insurance, his meeting with the clients on two occasions during which they revealed their financial situation, and his voluntary suggestion of a policy were "sufficient to establish a confidential relationship between the parties—or at a minimum to create a

24

jury issue as to the existence of such a relationship." 4 F. Supp. 2d at 381. Even though the insured provided information about his finances and expressed his desire to provide enough insurance so his wife would not have to work, the court concluded a jury issue was not presented.

The *Weisblatt* court cited a definition of a fiduciary or confidential relationship like the definition used in Kansas. See 4 F. Supp. 2d at 381. Viewing the evidence in the light most favorable to the plaintiff, the court reasoned that the plaintiff had not shown a special relationship where the insured's interests were turned over to the agent for protection. 4 F. Supp. 2d at 382. The court noted that having two meetings for the sole purpose of selling insurance is "far from adequate to create a 'relationship of actual closeness' between the two parties to inspire confidence" that the agent "was 'bound to act for the benefit of [the insureds] and (could) take no benefit for himself.' [Citation omitted.]" 4 F. Supp. 2d at 381. The court continued by noting that "[a]s in every other business, an insurance agent's primary enterprise is to sell insurance, a vocation no adult consumer would confuse with a religious order. Concomitantly, a reasonable buyer of insurance (or any other product) must, at peril of caveat emptor, act as a reasonable consumer, e.g., research her needs from multiple sources and price-shop for policies." 4 F. Supp. 2d at 382.

We also find support for granting summary judgment in two Kansas cases. Both clarify whether judgment as a matter of law may be appropriate even though "[t]he determination of a fiduciary relationship is essentially a factual one." *Dugan v. First Nat'l Bank in Wichita*, 227 Kan. 201, 208, 606 P.2d 1009 (1980).

One is *Denison State Bank*, which we have cited for its discussion of principles about fiduciary relationships. There, this court held that a bank customer failed to establish a fiduciary relationship by testifying that he "trusted and relied upon the Bank to furnish him complete, honest information." 230 Kan. at 696. To recognize a fiduciary relationship would "convert ordinary day-to-day business transactions into fiduciary

25

relationships where none were intended or anticipated." 230 Kan. at 696. The court required the "conscious assumption" of duties by the one sought to be held to the duties of a fiduciary. 230 Kan. at 696. The trial judge thus erred by not granting a directed verdict as a matter of law.

The second case suggesting summary judgment is appropriate here is *Dugan*, which also examined the relationship between a bank and one of its customers. The customer had a long relationship with the bank, as a depositor and borrower. The customer argued a special duty arose from that relationship and the bank had a duty to share information that made a transaction negotiated through the bank contrary to her best interests. Despite the bank customer's invocation of the special relationship exception, we held summary judgment was appropriate. We recognized that a special relationship could arise if the customer sought the advice of the bank and "the bank had knowledge of the reliance and confidence of the customer" and assumed the special duties. 227 Kan. at 208. But those facts were not presented in *Dugan*. Given that, we held as a matter of law that no fiduciary relationship arose and summary judgment against the bank customer was appropriate. 227 Kan. at 209.

Turning to Cathy's arguments, we likewise conclude the district judge here appropriately entered summary judgment because Cathy failed to present evidence, even when considered in the light most favorable to her, that suggests Guinn knew she entrusted him with protecting her interest. Nothing shows he assumed a special or peculiar "duty to act primarily for [her] benefit" rather than for his or Ozark National's benefit.' *Denison State Bank*, 230 Kan. at 692.

Because we reach this conclusion, we do not discuss the alternative rulings of the district judge or the Court of Appeals, including both courts' conclusion that Cathy was not the real party in interest. Doing so would be dictum because it is not necessary to our decision. See Black's Law Dictionary 570 (12th ed. 2024) (defining "judicial dictum" as

26

discussion of issues material to case, and even briefed, but not necessary to decision). Appellate courts generally avoid writing dictum, as it is not binding and can lead to confusion in future cases. See *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 206, 506 P.3d 267 (2022); *Law v. Law Company Building Assocs.*, 295 Kan. 551, 564, 289 P.3d 1066 (2012).

In conclusion, although we disagree with some of the rationale for the Court of Appeals decision on the fiduciary duty issue, we agree with its decision that summary judgment on that claim was appropriate, and we affirm the outcome of the Court of Appeals decision. We also affirm the district judge's decision to grant summary judgment on Cathy's fiduciary duty claim.

3. *Negligent Misrepresentation*

We now turn to the specifics of Cathy's claim for negligent misrepresentation.

*Additional Facts*

Ozark moved for summary judgment on Cathy's negligent misrepresentation claim based on an argument there was no evidence of some elements. It quoted the recitation of those elements found in *Stechschulte v. Jennings*, 297 Kan. 2, 22, 298 P.3d 1083 (2013):

> "One who, in the course of any transaction in which he or she has a pecuniary interest, supplies false information for the guidance of another person is liable for damages suffered by such other person caused by reasonable reliance upon the false information if: (1) the person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating the false information; (2) the person who relies upon the information is the person for whose benefit and guidance the information is supplied; and (3) the damages are suffered in a transaction that the person supplying the

27

information intends to influence. See *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604, 876 P.2d 609 (1994); PIK Civ. 4th 127.43."

*Stechschulte*'s delineation of these elements derives from the Restatement (Second) of Torts § 552 (1977), which we adopted in *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604, 876 P.2d 609 (1994). See *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 936-38, 305 P.3d 622 (2013) (citing *Stechschulte*, 297 Kan. at 22).

Ozark, in its motion for summary judgment, emphasized the requirement that the one providing the information must supply "false information" and contended that Guinn made no affirmative misstatement. To support the argument, Ozark quoted Cathy's factual contentions in the pretrial order in which she set out the information Guinn supplied. Ozark then pointed out that the discovery record, including Cathy's admissions, revealed Guinn's statements were accurate. Given that, it contended that Cathy's claim failed for four reasons, including two that relate to our analysis: (1) Cathy provided no evidence of an affirmative misrepresentation of fact and (2) Cathy was adding a claim of fraud by silence that was not claimed in the petition or included in the pretrial order.

Cathy responded to Ozark's statement of facts by acknowledging Ozark's reliance on *Stechschulte* and its statement of elements and stating, "Plaintiff and the facts supporting her cause of action for negligent misrepresentation comport with those elements." Cathy did not controvert Ozark's statements of fact setting out Guinn's representations. Nor did she controvert statements of fact that referred to Cathy's deposition testimony and read that "Plaintiff testified that the statements by Mr. Guinn in [the preceding paragraph] were accurate." For example, for one of Guinn's representations, the uncontroverted facts and Cathy's reply stated:

"18. Mr. Guinn said that the premiums on Mr. Stroud's life insurance policy were going to drastically or dramatically increase and that the Strouds needed to change Mr. Strouds' term life insurance policy to a whole life policy before that happens.

28

*"Uncontroverted.*

"19. Plaintiff testified that the statements by Mr. Guinn in paragraph 18 above were accurate.

*"Uncontroverted."*

After not controverting the truth or accuracy of any of Guinn's statements, Cathy argued that "her claim for negligent misrepresentation [is] based upon the context of the statements of Defendant Guinn." She added that she and her husband told Guinn they were concerned they would not have enough money in their bank account to cover the withdrawal if the premiums increased while they were in Houston for Alan's "imminent surgery," which could be at any time. Guinn, knowing of their concern and knowing that the premium increase was at least two years in the future, did not remind them of when the premium increases would occur. Instead, he expressed concern "that should that happen and a payment for the term policy was missed, Mr. Stroud might not be able to get replacement life insurance due to his health condition[,] leading [Cathy] and her husband to believe the premiums could increase while they were in Houston." Cathy summarized, stating that "[b]y so doing, Defendant Guinn negligently miscommunicated that Plaintiff and her husband needed to convert the $60,000.00 term life policy to the $30,000.00 whole life policy at that time, when in fact there was no need to do so and that to do so was totally contrary to their best interests." The focus thus was not on a misstatement made by Guinn but rather on his failure to remind them of when the premium increases would occur or to otherwise clarify the premium change was not imminent.

Ozark responded to this by saying that Cathy was "outlining a completely different cause of action than the one that's actually been asserted in this case" and was now asserting fraud by silence. At oral argument before the district judge on the motion for summary judgment, Cathy contended the claim met the elements of a negligent

29

misrepresentation and she clarified that she was "not seeking to amend [to add a claim of] fraud by silence by any means."

The district judge granted Ozark summary judgment. The judge explained that "[w]hile Plaintiff would like the Court to look at the 'context' of the statements that Defendant Guinn made to Plaintiff, her claim is one of negligent misrepresentation . . . [and she] has made no showing that Defendant Guinn supplied any false information to her." The judge added that Cathy had not provided evidence that Alan relied on false information. The judge thus granted summary judgment on the negligent misrepresentation claim.

The Court of Appeals panel disagreed with the district judge's reasoning. It stated:

"[T]he trial court's actual reasoning for dismissing Cathy's negligent misrepresentation claims was questionable. The trial court found that Cathy failed to produce any evidence that Guinn supplied false information and that Alan relied on the allegedly false information. Regarding the trial court's finding that Cathy failed to produce any evidence that Guinn supplied false information, Ozark and Guinn argue that Cathy's claim is more akin to a fraud by silence claim. Regardless of this argument, a trial court should be hesitant to grant summary judgment on negligence claims. [Citation omitted.] Our Supreme Court has recently explained that to present a prima facie case of negligence to survive summary judgment, a plaintiff does not need to present direct evidence. Instead, a plaintiff may rely on circumstantial evidence that does 'not exclude every other reasonable conclusion as long as it forms a basis from which a jury could draw a reasonable inference.'" *Montgomery v. Saleh*, 311 Kan. 649, 663, 466 P.3d 902 (2020)." *Stroud,* 2022 WL 2114769, at *11.

The Court of Appeals panel then discussed why it felt Guinn's statement to the Strouds was a misrepresentation. It pointed to Guinn's statement to the Strouds, which it summarized as being that Alan "'need[ed]' to convert his term life insurance policy into a whole life insurance policy." The panel concluded a reasonable jury could conclude this

30

was false "[g]iven (1) that Alan had nearly three years left on his term life insurance policy before his premiums would increase again, (2) that Guinn's advice resulted in Alan's annual premium payment increasing immediately, and (3) that Guinn knew of Alan's severe health situation." *Stroud*, 2022 WL 2114769, at *11. The panel also concluded Alan's conversion of his policy demonstrated Alan relied on Guinn's advice. 2022 WL 2114769, at *11.

We note that Guinn's statement, as set out in the uncontroverted facts quoted above (see fact No. 18), was that "the premiums on Mr. Stroud's life insurance policy were going to drastically or dramatically increase and that the Strouds needed to change Mr. Stroud's term life insurance policy to a whole life policy *before that happens*." (Emphasis added.) In responding to Ozark's summary judgment motion, Cathy agreed that she had testified during her deposition that Guinn's statement was accurate. (See uncontroverted fact No. 19.) And, in responding to the summary judgment motion, she stated, "[I]t is true that the Strouds needed to convert Alan Stroud's term policy to a whole life policy before '. . . the premiums on his term policy were going to drastically or dramatically increase'" and "it is true that if the premiums on the term policy increased while the Strouds were in Houston for the surgery and a premium was missed, Mr. Stroud might not be able to get replacement insurance."

Cathy's complaint was not with the affirmative statements Guinn made, which said they needed to convert the policy before the premiums increased, but with the implication that the premium increase was going to happen while they were in Houston. In essence, the Court of Appeals, not Cathy, controverted whether Guinn made affirmative misrepresentations.

The panel, however, did not discuss the distinction between affirmative misrepresentations and misrepresentation by silence even though it recognized that we had adopted Restatement (Second) of Torts § 552.

31

*Preservation*

Ozark did not file a cross-petition or conditional cross-petition for review that (1) raised the issue of whether the Court of Appeals panel erred in finding that a question of fact existed or (2) asked us to reach the question not addressed by the panel of whether Cathy was raising a different tort. Yet, as we have discussed, it had argued to both the district judge and the Court of Appeals that the facts did not meet the elements of negligent misrepresentation and that Cathy was raising the tort of fraud by silence. The district judge's ruling agreed with those arguments.

As we have also noted, the failure to raise adverse rulings or questions not addressed through a petition, cross-petition, or conditional cross-petition for review usually means we treat the question as unpreserved and will not consider the error. See Supreme Court Rule 8.03(b)(6)(C)(i). But we "may address a plain error not presented." Supreme Court Rule 8.03(b)(6)(C)(i) (2024 Kan. S. Ct. R. at 56); *Quinn*, 317 Kan. at 626. We have recognized this exception can be employed in situations where an issue or argument is a necessary step in our analysis and a failure to discuss the question could lead to confusing or misleading precedent. See, e.g., *State v. Childs*, 275 Kan. 338, 342, 64 P.3d 389 (2003) (considering unpreserved constitutional issue because it would otherwise be "virtually impossible" to decide the merits without considering an unpreserved issue and "'we cannot intelligently dispose of this litigation without considering and discussing'" it). This exception applies here.

*No False Statement*

We first address whether the Court of Appeals erred in not accepting Cathy's admission that Guinn's statements were accurate and true. We have directed that "[s]ummary judgment should be rendered forthwith if the pleadings, depositions, answers

32

to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact." *DeBauge Bros., Inc. v. Whitsitt*, 212 Kan. 758, 762, 512 P.2d 487 (1973); see *Knapp v. Unified School District*, 209 Kan. 237, 240, 496 P.2d 1400 (1972) ("Where no genuine issue of material fact exists, it is proper for the trial court to enter summary judgment.").

Here, Cathy's deposition testimony and her admissions revealed that Guinn supplied true information, although the true information left room for inferring urgency that did not exist. His statements were not false but might have been misleading to the extent Guinn did not supply information about the timeline for the premium increase. But, as we will next discuss, that claim does not fall under the elements discussed in *Stechschulte*.

*Supplies False Information*

*Stechschulte* recited the elements of negligent misrepresentation as defined in Restatement (Second) of Torts § 552. The first part of the statement of elements reads: "One who, in the course of any transaction in which he or she has a pecuniary interest, supplies false information for the guidance of another person . . . ." *Stechschulte*, 297 Kan. at 22.

The district judge focused on the phrase "supplies false information" and held that Guinn's statements were not false and thus no evidence established this element. Cathy argues the statements were false because the context implied a false urgency as Guinn withheld information about the timeline for premium increases. But that type of misrepresentation is not covered by § 552, which requires an affirmative misrepresentation. A different section of the Restatement covers negligent nondisclosure (Restatement [Second] of Torts § 551 [1977]). The Restatement also separately defines fraudulent misrepresentation (§ 525), fraud by ambiguous representation (§ 527), fraud by

33

a misrepresentation that is misleading because it is incomplete (§ 529), and fraud by concealment (§ 550). The Restatement thus distinguishes between nondisclosure and affirmative statements. And courts adopting § 552 have thus distinguished the claims. See, e.g., *Outlook Windows P'ship v. York Int'l Corp.*, 112 F. Supp. 2d 877, 896 (D. Neb. 2000) (distinguishing negligent misrepresentation claim from nondisclosure claim and holding that failure to disclose information is governed by Restatement of Torts [Second] § 551); *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 128 (Iowa 2001) ("We begin by recognizing that the tort of negligent misrepresentation does not apply to the failure to provide information, but to the disclosure of information."); *Hawkins Const. v. Intern. Ass'n Local 21*, 3 Neb. App. 238, 243, 525 N.W.2d 637 (1994) (holding allegations regarding defendant's failure to inform plaintiff of certain facts did not constitute a claim for negligent misrepresentation).

These distinctions track with Kansas law which has distinguished between fraud through affirmative statements and fraud through silence. Compare *Broberg v. Boling,* 183 Kan. 627, 634-35, 331 P.2d 570 (1958) (affirmative misrepresentation), with *Wolf v. Brungardt,* 215 Kan. 272, Syl. ¶ 4, 524 P.2d 726 (1974) (fraud by silence); see *Stechschulte*, 297 Kan. at 19-22 (discussing elements of separate and distinct torts of fraudulent inducement, fraud by silence, and negligent misrepresentation under *Mahler*).

Cathy had the opportunity during summary judgment proceedings to argue that her claim fell under a Restatement section other than § 552, that we should apply different elements other than those in *Stechschulte*, or we should abandon use of § 552. But she did not. Instead, she argued her claim met those elements. Thus, neither the parties nor any court has had a chance to discuss whether the uncontroverted facts meet the elements of the type of claim Cathy relies on or even what those elements are or should be. Instead, the parties devote pages of their briefs to discussing the irrelevant elements of § 552. This case is thus like *Hanson v. Hackman Corp.*, No. 98,073, 2008 WL 4471679 (Kan. App. 2008) (unpublished opinion).

34

There, on appeal from a jury verdict about a dispute arising from a real estate sale, the seller argued the trial judge erred in submitting the question of negligent misrepresentation to the jury because there was no evidence the seller provided false information. Rather, the allegation was about nondisclosure. The Court of Appeals panel agreed, holding that under the elements set out in *Mahler* (and repeated in *Stechschulte*) "negligent misrepresentation can never be premised on a claim of nondisclosure because a failure to speak does not satisfy an essential element of the claim:  affirmatively supplying false information. Accordingly, we find Hanson's claim for negligent misrepresentation based on nondisclosure is without merit." 2008 WL 4471679, at *6.

The same conclusion applies here, and it is the conclusion reached by the district judge. A pretrial order had been entered, the parties had moved forward on summary judgment, and Cathy had embraced the elements for negligent misrepresentation set out in *Stechschulte*, 297 Kan. at 22, and specifically disclaimed she was relying on other theories. The Court of Appeals thus erred in treating an accurate statement as a misrepresentation because it did not disclose additional information. For us to ignore the error would confuse the law regarding the elements in Restatement (Second) of Torts § 552 and the difference between and it and other Restatement provisions covering other misrepresentation and fraud theories. As a result, unlike the question of how to interpret *Spencer*, which was unpreserved under Rule 8.03, this time, we address the questions raised.

In summary, Cathy has admitted Guinn did not supply false information as that phrase is used in § 552 to mean an affirmative misrepresentation rather than a misrepresentative by silence. She has thus failed to establish that the summary judgment record presents a prima facie case of negligent misrepresentation. The district judge did not err in granting summary judgment on this point. The Court of Appeals, while disagreeing on this point, affirmed the entry of summary judgment on another ground—

35

that Cathy was not the real party in interest. But, as with Cathy's fiduciary duty claim, we need not address the real party in interest question given our ruling that Cathy failed to advance sufficient evidence to demonstrate the existence of genuine issues of material fact for trial on her claim of negligent misrepresentation.

4. *Vicarious Liability*

Vicarious liability, sometimes called imputed negligence or respondeat superior, generally applies "to legal liability which arises solely because of a relationship and not because of any actual act of negligence by the person held vicariously liable for the act of another." See *Long v. Houser*, 57 Kan. App. 2d 675, 677, 456 P.3d 549 (2020) (quoting *Leiker v. Gafford*, 245 Kan. 325, 355, 778 P.2d 823 [1989]). Cathy's claims against Ozark turn on her claims against Guinn. The district judge and the Court of Appeals granted summary judgment for Ozark on both claims only after determining Cathy's claims failed as a matter of law. Because we agree that summary judgment was appropriate, we affirm the district judge and Court of Appeals rulings that Ozark National was entitled to summary judgment on Cathy's vicarious liability claim.

5. *Punitive Damages*

Cathy sought permission to amend her petition to add a claim for punitive damages based on Ozark's breach of fiduciary duty. When the district judge granted Ozark summary judgment, no claim survived to support the recovery of punitive damages. Because we affirm the district judge's grant of summary judgment on Cathy's breach of fiduciary duty claim, we affirm the district judge's denial of Cathy's motion for punitive damages.

CONCLUSION

We affirm the district court and, although our reasoning at times differs from the Court of Appeals' decision, we affirm the panel's ultimate decision to affirm the district court's grant of summary judgment.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.